# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 12-21890-CIV-MORENO/OTAZO-REYES

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver for
BankUnited, FSB,

        Plaintiff,

v.

FLORIDIAN TITLE GROUP, INC., and
FIRST AMERICAN TITLE INSURANCE
COMPANY,

        Defendants.

_____/

## REPORT AND RECOMMENDATION RE: D.E. 48 & 67

THIS CAUSE came before the Court upon the following motions:

1.      Defendant First American Title Insurance Company's ("First American") Motion for Summary Judgment [D.E. 48]; and

2.      Plaintiff Federal Deposit Insurance Corporation's ("FDIC") Cross-Motion for Partial Summary Judgment as to First American's Affirmative Defenses Regarding Standing and Notice ("Cross-Motion for Partial Summary Judgment") [D.E. 67].

This case was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Federico A. Moreno, Chief United States District Judge [D.E. 50].  The undersigned held a hearing on these motions on April 26, 2013.  For the reasons stated below, the undersigned RESPECTFULLY RECOMMENDS that First American's Motion for Summary Judgment [D.E. 48] be GRANTED and the FDIC's Cross-Motion for Partial Summary Judgment [D.E. 67] be DENIED.

## PROCEDURAL AND FACTUAL BACKGROUND

BankUnited, FSB ("BankUnited") was a federally chartered savings bank with its principal place of business in Coral Gables, Florida. BankUnited was in the business of, among other things, funding mortgage loans. On May 21, 2009, BankUnited was closed by the Office of Thrift Supervision and the FDIC was appointed Receiver for BankUnited pursuant to 12 U.S.C. § 1821.

The FDIC brings this action in its capacity as Receiver for BankUnited in connection with five mortgage loans that were made by BankUnited prior to its demise. Defendant Floridian Title Group, Inc. ("Floridian Title") served as the closing agent on all five loans. First American issued Closing Protection Letters ("CPLs") as to only two of the loans, namely, the Gustavo Perchik Loan ("Gustavo Loan") and the Dario Perchik Loan ("Dario Loan"). In Counts IV and VIII of the Complaint, the FDIC brings breach of contract claims and seeks to recover damages from First American pursuant to the terms of the CPLs issued for the Gustavo Loan and the Dario Loan, respectively, based on Floridian Title's handling of the closings.[1]

First American has moved for summary judgment as to some of its affirmative defenses, arguing that: (1) the FDIC lacks standing to bring the claims against it because the Gustavo Loan and the Dario Loan were sold to BankUnited N.A. ("New BankUnited"); (2) the FDIC's claims are time-barred because it failed to comply with the 90-day notice provision of the CPLs; and (3) the FDIC has failed to adduce sufficient facts to support its CPL claims in connection with the Gustavo Loan and the Dario Loan. The FDIC, in turn, has moved for partial summary judgment on the issues of standing and notice.

As more fully set forth below, the undersigned concludes that First American is entitled to summary judgment on the two counts against it, but only on the basis of the FDIC's lack of

---

[1] First American has asserted a crossclaim for contractual indemnity against Floridian Title.

standing, and that the FDIC is not entitled to summary judgment on the issues of standing and notice.

## STANDARD OF REVIEW

A motion for summary judgment should be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Moore ex rel. Moore v. Reese, 637 F.3d 1220, 1232 (11th Cir. 2011). In considering a motion for summary judgment, a court is to view the facts and draw "all reasonable inferences in favor of the nonmoving party." Id. at 1231. "All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party." Pippin v. Nat'l Union Fire Ins. Co., 845 F. Supp. 849, 850 (M.D. Fla. 1994).

## UNDISPUTED MATERIAL FACTS

### A. *The Gustavo Loan and the Dario Loan*

1.     Gustavo and Dario Perchik are brothers.

2.     Elias Perchik, a brother of Gustavo and Dario, was the sole owner of Real Estate Development, II, LLC ("RED II").

3.     Gustavo Perchik was the treasurer of RED II.

4.     Dario Perchik was the manager of RED II.

5.     On May 4, 2007, Gustavo Perchik entered into a purchase agreement with RED II (the "Gustavo Purchase Agreement") to buy a condominium-style townhome unit located at 834 N.E. 14th Place, Fort Lauderdale, Florida 33304 (the "Gustavo Property").

6.     On May 10, 2007, Dario Perchik entered into a purchase agreement with RED II

(the "Dario Purchase Agreement") to buy a condominium-style townhome unit located at 836 N.E. 14th Place, Fort Lauderdale, Florida 33304 (the "Dario Property").

7.      The Gustavo Purchase Agreement and the Dario Purchase Agreement were provided to BankUnited as part of its loan application and underwriting process.

8.      Floridian Title stated in a May 4, 2007, escrow letter that the $90,000.00 deposit from Gustavo Perchik for the purchase of the Gustavo Property had been received and cleared on that date.

9.      According to the deposition testimony of Floridian Title's corporate representative, Lorena Pardo, Gustavo Perchik's $90,000.00 down payment was paid with two (2) checks totaling $108,000: Check No. 1002 dated August 14, 2007, in the amount of $72,000, and Check No. 1057 dated November 28, 2007, in the amount of $36,000.

10.     Floridian Title stated in a May 10, 2007, escrow letter that it was holding the amount of $85,000, representing the deposit for the purchase of the Dario Property, and that all funds had cleared.

11.     A check was deposited on May 11, 2007, for $85,000, for the deposit on the purchase of the Dario Property.

12.     BankUnited obtained multiple independent appraisals for the Gustavo Property and the Dario Property, confirming that each had a value greater than the $350,000 purchase price (i.e. ranging from $352,000 to $362,000).

13.     BankUnited engaged in extensive underwriting to determine that Gustavo Perchik and Dario Perchik were bona-fide borrowers with the financial capacity to repay the Gustavo Loan and the Dario Loan, respectively.

14.     On January 4, 2008, BankUnited made the Gustavo Loan for $280,000, evidenced

by a promissory note (the "Gustavo Note").

15.     The Gustavo Note was secured by a mortgage on the Gustavo Property (the "Gustavo Mortgage").

16.     On January 4, 2008, BankUnited made the Dario Loan for $280,000, evidenced by a promissory note (the "Dario Note").

17.     The Dario Note was secured by a mortgage on the Dario Property (the "Dario Mortgage").

18.     Floridian Title performed closing services on the Gustavo Loan and the Dario Loan.

19.     On January 4, 2008, BankUnited funded the Gustavo Loan and the Dario Loan, and Floridian Title closed the transactions.

20.     Floridian Title prepared and signed HUD-1 Settlement Statements for the closings on the Gustavo Property and the Dario Property.

21.     The HUD-1 Settlement Statement for the closing on the Gustavo Property reflects a deposit or earnest money in the amount of $90,000.

22.     The HUD-1 Settlement Statement for the closing on the Dario Property reflects a deposit or earnest money in the amount of $85,000.

23.     Floridian Title knew at the time of the closings on the Gustavo Loan and the Dario Loan that Dario, Gustavo and Elias Perchik were brothers and that Gustavo Perchik was the treasurer of RED II.

24.     Floridian Title did not disclose to BankUnited that Gustavo and Dario Perchik were brothers of Elias Perchik, that Dario Perchik was the manager of RED II, or that Gustavo Perchik was the treasurer of RED II.

25.     On January 4, 2008, Floridian Title signed BankUnited's closing instructions for the Gustavo Loan and certified: "I hereby certify that I have read and will comply with all conditions as stipulated on these Loan Closing and Funding Instructions. **Disbursement of the loan proceeds has not occurred.**"

26.     On January 4, 2008, Floridian Title signed BankUnited's closing instructions for the Dario Loan and certified: "I hereby certify that I have read and will comply with all conditions as stipulated on these Loan Closing and Funding Instructions. **Disbursement of the loan proceeds has not occurred.**"

27.     Oscar Grisales ("Grisales") is Floridian Title's attorney and president.

28.     Grisales' involvement with the Gustavo Loan and the Dario Loan consisted of reviewing the title, the commitments and the closing documents, including the HUD-1 Settlement Statements, and instructing Floridian Title's staff on how to proceed.

29.     Grisales signed the Gustavo Purchase Agreement on behalf of RED II.

30.     Grisales also signed the HUD-1 Settlement Statement for the Gustavo Property transaction on behalf of RED II.

31.     Grisales signed the Dario Purchase Agreement on behalf of RED II.

32.     Grisales also signed the HUD-1 Settlement Statement for the Dario Property transaction on behalf of RED II.

33.     First American provided title insurance in connection with the Gustavo Loan and the Dario Loan.

34.     On December 7, 2007, First American issued a blanket CPL to BankUnited (the "Blanket CPL") [D.E. 1-12].

35.     On January 24, 2008, First American issued a CPL to BankUnited for the Gustavo

Loan (the "Gustavo CPL") [D.E. 49-17].

36.     On June 4, 2008, First American issued a CPL to BankUnited for the Dario Loan

(the "Dario CPL") [D.E. 49-18].[2]

37.     Dario Perchik defaulted on the Dario Loan on November 1, 2008.

38.     One month later, on December 1, 2008, Gustavo Perchik defaulted on the

Gustavo Loan.

39.     The Gustavo Loan and the Dario Loan were part of a portfolio of failed loans on

which BankUnited suffered billions in losses.

### B. *BankUnited's Receivership*

40.     On May 21, 2009, the Office of Thrift Supervision ("OTS") closed BankUnited.

41.     On that same date, the FDIC was appointed Receiver for BankUnited.

42.     On or around May 21, 2009, the FDIC sold certain BankUnited assets to New

BankUnited pursuant to a Purchase and Assumption Agreement (the "P&A Agreement") [D.E.

49-15].

43.     Section 3.1 of the P&A Agreement provides, in pertinent part:

> With the exception of certain assets expressly excluded in Sections
> 3.5 and 3.6, the Assuming Bank hereby purchases from the
> Receiver, and the Receiver hereby sells, assigns, transfers,
> conveys, and delivers to the Assuming Bank, all right, title, and
> interest of the Receiver in and to all of the assets (real, personal
> and mixed, wherever located and however acquired) of the Failed
> Bank whether or not reflected on the books of the Failed Bank as
> of Bank Closing.

44.     Section 3.5 of the P&A Agreement provides, in pertinent part:

> The Assuming Bank does not purchase, acquire or assume, or
> (except as otherwise expressly provided in this Agreement) obtain
> an option to purchase, acquire or assume under this Agreement: . . .

---

[2]  The Dario CPL was actually issued by United General Title Insurance Company but, for purposes of
this litigation, is deemed to have been issued by First American.

(b) any interest, right, action, claim, or judgment against (i) . . . [any] Person . . . retained by the Failed Bank . . . arising out of any act or omission of such Person in such capacity, (ii) any underwriter of financial institution bonds, banker's blanket bonds or any other insurance policy of the Failed Bank, . . . or (iv) any other Person whose action or inaction may be related to any loss (exclusive of any loss resulting from such Person's failure to pay on a Loan made by the Failed Bank) incurred by the Failed Bank; provided, that for the purposes hereof, the acts, omissions or other events giving rise to any such claim shall have occurred on or before Bank Closing, regardless of when any such claim is discovered and regardless of whether any such claim is made with respect to a financial institution bond, banker's blanket bond, or any other insurance policy of the Failed Bank in force as of Bank Closing[.]

45.     The Gustavo Loan, Note and Mortgage, and the Dario Loan, Note and Mortgage were among the assets of BankUnited encompassed by the P&A Agreement.

46.     On August 10, 2009, the FDIC executed an Assignment of Mortgage assigning "all its right title and interest" in the Gustavo Mortgage to New BankUnited [D.E. 49-19].

47.     On November 1, 2011, the Clerk of Court for the Seventeenth Judicial Circuit in and for Broward County, Florida issued to New BankUnited a Certificate of Title for the Gustavo Property after a foreclosure sale [D.E. 49-21].

48.     On December 9, 2011, the FDIC executed an Assignment, wherein it recited that, pursuant to the P&A Agreement, it had sold to New BankUnited: the Dario Note and the Dario Mortgage (collectively, the "Dario Loan Documents"); the rights, claims and interests underlying and arising from the Loan Documents (the "Rights"); and "[a]ny and all claims, actions, causes of action, choses in action, judgments, demands, rights, damages and liens, together with the right to seek reimbursement of attorney's fees, costs or other expenses of any nature whatsoever, whether known or unknown, arising from, relating to or based upon the Loan Documents and the Rights (collectively, the 'Claims');" and wherein it "unconditionally grant[ed], transfer[red] and

assign[ed] to [New BankUnited] all of [its] right, title and interest in the Loan Documents, Rights and Claims." [D.E. 49-20].

49.     On that same date, New BankUnited executed an Assignment of Mortgage assigning the Dario Mortgage and the Dario Note to McCormick 105, LLC [D.E. 49-22].

### C. *The FDIC's Investigation*

50.     In its role as Receiver, the FDIC began an investigation into the losses suffered by BankUnited.

51.     Near the time that BankUnited was closed in May 2009, the Division of Resolutions and Receiverships ("DRR") - a division of the FDIC - gave "a huge sheet of loans" to the FDIC's in-house counsel for counsel to investigate.

52.     That list was turned over in the third or fourth quarter of 2009 to outside counsel, Mortgage Recovery Law Group ("MRLG"), to investigate further for potential claims against third parties.

53.     From December, 2009 through 2011, MRLG requested from New BankUnited various reports in various formats relating to the BankUnited failed loans.

54.     On January 11, 2012, MRLG asked New BankUnited to produce the loan files for the Gustavo Loan and the Dario Loan, along with 33 other loans.

55.     According to the deposition testimony of MRLG's corporate representative, Paul Levin, these 35 loans files were selected by MRLG for review because they involved early payment defaults and large down payments, which seemed inconsistent with an early payment default.

56.     During the period of February 1-7, 2012, MRLG received BankUnited's complete loan file for the Gustavo Loan.

57.     According to Mr. Levin's deposition testimony, by the first week of February, 2012, the FDIC, through MRLG, knew that Oscar Grisales had signed the HUD-1 Settlement Statements on behalf of RED II and that Gustavo, Dario and Elias Perchik were related.

58.     On February 2, 2012, MRLG internally discussed issuance of a subpoena to Floridian Title.

59.     The Floridian Title subpoena was issued on February 21, 2012.

60.     As part of its investigation, the FDIC also served administrative subpoenas upon JGB Bank (with whom Floridian Title used to maintain its escrow account).

61.     JGB Bank produced documents to the FDIC on April 26, 2012.

**D.  *The FDIC's Notice to First American***

62.     On May 10, 2012, the FDIC through its counsel, MRLG, provided written notice to First American of CPL claims in connection with Floridian Title's closings on the Gustavo Property transaction and the Dario Property transaction.

63.     In that notice, MRLG described an alleged fraudulent real estate scheme involving RED II and Floridian Title.  According to MRLG, upon learning of the scheme, the FDIC initiated an investigation, which uncovered certain irregularities in Floridian Title's actions.  With regard to both the Gustavo Loan and the Dario Loan, MRLG contended that Floridian Title did not collect the required deposits and did not disclose that fact to BankUnited.  MRLG claimed that such conduct on the part of Floridian Title fell within the coverage provided by the CPLs issued by First American to BankUnited.

**E.  *The CPLs***

64.     The terms of the Blanket CPL [D.E. 1-12] and the Dario CPL [D.E. 49-18] are

consistent with the form CPL promulgated by the State of Florida.[3]

65.     The pertinent Florida compliant CPL language is as follows:

> When title insurance from [First American] is specified for
> [BankUnited's] protection in connection with closings of real estate
> transactions in which [BankUnited is] to be the lessee or purchaser of an
> interest in land or a lender secured by a mortgage (including any other
> security instrument) of an interest in land, [First American], subject to the
> Conditions and Exclusions set forth below, hereby agrees to reimburse
> [BankUnited] for actual loss incurred by [BankUnited] in connection with
> such closing when conducted by [Floridian Title] when such loss arises
> out of:
>
> 1.   Failure of [Floridian Title] to comply with [BankUnited's] written
>      closing instructions to the extent that they relate to (a) the status of the
>      title to said interest in land or the validity, enforceability and priority
>      of the lien of said mortgage on said interest in land, including the
>      obtaining of documents and the disbursement of funds necessary to
>      establish such status of title or lien, or (b) the obtaining of any other
>      document, specifically required by [BankUnited], but not to the extent
>      that said instructions require a determination of the validity,
>      enforceability or effectiveness of such other document, or (c) the
>      collection and payment of funds due [BankUnited] or
>
> 2.   Fraud or dishonesty of [Floridian Title] in handling [BankUnited's]
>      funds or documents in connection with such closing.

See Blanket CPL [D.E. 1-12]

66.     Notwithstanding the parties' stipulation that the Dario CPL conforms with this
language, the words "of an interest in land" following the parenthetical "(including any other
security instrument)" in the opening paragraph are missing from the Dario CPL.  Compare Dario
CPL [D.E. 49-18] with Blanket CPL [D.E. 1-12].

67.     The only "Condition or Exclusion" that is relevant to this litigation appears at
paragraph D of the Florida approved CPL and states:

> Claims shall be made promptly to [First American] at its principal office .
> .  .  .   When the failure to give prompt notice shall prejudice [First
> American], then liability of [First American] hereunder shall be reduced to

---

[3]  See Fla. Stat. § 627.786(3); Fla. Admin. Code r. 69O-186.010 (1991).

the extent of such prejudice.   [First American] shall not be liable hereunder unless notice of loss in writing is received by [First American] within ninety (90) days from the date of discovery of such loss.

See Blanket CPL [D.E. 1-12]; Dario CPL [D.E. 49-18].

68.    The Gustavo CPL states: "The protection herein offered does not extend to real property transactions in the states of Florida, Iowa, Kansas, Louisiana, Nebraska, New Hampshire, New Jersey, New Mexico, New York, Pennsylvania, Texas, Vermont and Virginia. Closing Protection Letters have been regulated under the laws of those states."

69.    The risks covered by the Gustavo CPL are the same as those covered by the Florida compliant CPL, except that the paragraphs are labeled "A" and "B" rather than "1" and "2."

70.    Based on the deposition testimony of the FDIC's corporate representative, Sean Newbold, the FDIC is basing its claims against First American on the Dario CPL and the Gustavo CPL and not on the Blanket CPL.

71.    Specifically, the FDIC contends that Floridian Title breached provisions "1" and "2" of the Dario CPL and the identical provisions "A" and "B" of the Gustavo CPL.

72.    The FDIC also contends that, although Floridian Title obtained the documents required by BankUnited's closing instructions, those documents were invalid.

**DISCUSSION**

As noted above, the parties' cross-motions for summary judgment relate to the FDIC's standing to bring the CPL breach of contract claims against First American asserted in Counts IV and VIII of the Complaint, and the timeliness of the FDIC's notice to First American of the CPL claims.  Additionally, First American's motion for summary judgment argues that the FDIC has failed to adduce sufficient facts to support its CPL claims.

### *1. Standing*

#### *a. The CPLs at issue*

As set forth in the Undisputed Material Facts Section, *supra*, there are three CPLs at issue in this case: a Blanket CPL dated December 7, 2007; the Dario CPL dated June 4, 2008; and the Gustavo CPL dated January 24, 2008.  According to the deposition testimony of the FDIC's corporate representative Sean Newbold, which is incorporated in the Undisputed Material Facts, the FDIC is basing its claims against First American on the Gustavo CPL and the Dario CPL and not on the Blanket CPL.  However, the Dario CPL and the Gustavo CPL have problems.

Initially, First American argues that the FDIC cannot seek relief under the Dario CPL because the letter is dated June 4, 2008, which is five months after the closing on the Dario Property, and CPLs provide prospective, not retroactive relief.  The undersigned finds no merit in this contention because, regardless of the date of the letter, First American bound itself to provide the coverage specified therein in connection with the closing that took place on January 4, 2008.  The Dario CPL has another problem in that it does not strictly comply with the Florida approved form because the words "of an interest in land" following the parenthetical "(including any other security instrument)" in the opening paragraph are omitted.  However, the parties have stipulated that the Dario CPL is compliant with Florida law, notwithstanding the omitted language.  Therefore, the undersigned will deem the omitted language to constitute a scrivener's error and address the issue of standing as to the Dario Loan vis-à-vis the language of the Florida compliant CPL, namely, the Blanket CPL.

The problem with the Gustavo CPL is more serious.  It contains a proviso expressly excluding loans made in Florida.  Based on the FDIC's undisputed reliance on the Gustavo CPL and the document's express exclusion of Florida transactions, First American is entitled, without

more, to summary judgment as to Count IV of the Complaint.  At the April 26, 2013 hearing, the undersigned asked the FDIC's counsel, Orlando Villalba, which CPL is the FDIC traveling under for the Gustavo Loan, to which Mr. Villalba responded, "We are essentially traveling under the language of the blanket CPL, though, and I don't want to shoot myself in the foot here.  That is an issue to be dealt with."  See Hearing Transcript [D.E. 107 at 54:20-24].  Although counsel's representation to the Court contradicts the deposition testimony of the FDIC's corporate representative, the undersigned will, in an abundance of caution, include the Gustavo transaction in the substantive discussion of the FDIC's CPL breach of contract claims.

### b.  The transactions at issue

Based on the undisputed facts, the following transactions occurred with respect to the Gustavo Loan and the Dario Loan:

➢ On January 4, 2008, Bank United made the Gustavo Loan, which was evidenced by the Gustavo Note and secured by the Gustavo Mortgage, and the Dario Loan, which was evidenced by the Dario Note and secured by the Dario Mortgage.

➢ Dario Perchik defaulted on the Dario Loan on November 1, 2008 and Gustavo Perchik defaulted on the Gustavo Loan on December 1, 2008.

➢ The Gustavo Loan, Note and Mortgage, and the Dario Loan, Note and Mortgage were among the assets that the FDIC sold to New BankUnited on May 21, 2009 pursuant to the P&A Agreement.

➢ On August 10, 2009, the FDIC assigned "all its right title and interest" in the Gustavo Mortgage to New BankUnited, and on November 1, 2011, New BankUnited received a Certificate of Title for the Gustavo Property after a foreclosure sale.

➢ On December 9, 2011, the FDIC executed an Assignment, wherein it recited that, pursuant to the P&A Agreement, it had sold to New BankUnited: the Dario Note and the Dario Mortgage (collectively, the "Dario Loan Documents"); the rights, claims and interests underlying and arising from the Loan Documents (the "Rights"); and "[a]ny and all claims, actions, causes of action, choses in action, judgments, demands, rights, damages and liens, together with the right to seek reimbursement of attorney's fees, costs or other expenses of any nature whatsoever, whether known or unknown, arising from, relating to or based upon

the Loan Documents and the Rights (collectively, the 'Claims');" and wherein it "unconditionally grant[ed], transfer[red] and assign[ed] to [New BankUnited] all of [its] right, title and interest in the Loan Documents, Rights and Claims." On that same date, New BankUnited assigned the Dario Mortgage and the Dario Note to McCormick 105, LLC.

First American contends that the FDIC lacks standing to bring the CPL claims against it because the FDIC sold its contractual CPL rights by virtue of these transactions. The FDIC argues that it has retained the right to bring the CPL claims pursuant to the exclusions set forth in the P&A Agreement.

### c. *The CPL contractual rights run with the interest in land*

In Wall St. Mortg. Bankers, Ltd. v. Attorneys' Title Ins. Fund, Inc., Case No. 1:08-cv-21648 (S.D. Fla. Sept. 9, 2009), the Honorable Edwin G. Torres issued a Report and Recommendation wherein he interpreted the language of a Florida compliant CPL issued by Attorneys' Title Insurance Fund, Inc. to Wall Street Mortgage Bankers, Ltd. ("Wall Street"):

> When title insurance of Attorneys' Title Insurance Fund, Inc. is specified for your protection in connection with closings of real estate transactions in which you are to be the lessee or purchaser of an interest in land or *a lender secured by a mortgage* (including any other security instrument) of an interest in land, Attorneys' Title Insurance Fund, Inc., subject to the Conditions and Exclusions set forth below, hereby agrees to reimburse you for actual loss incurred by you in connection with such closings when conducted by said Issuing Agent or Approved Attorney when such loss arises out of . . .

Id. at 7 (emphasis in original).[4] Magistrate Judge Torres concluded that, "the plain meaning of the CPL's language quoted above shows that coverage under the policy would only be afforded to those who hold interest in the 'land' for which the CPL was issued." Id. Magistrate Judge Torres thus concluded that, after Wall Street sold the two underlying loans and assigned the corresponding promissory notes to third parties, it lost the protections afforded by the CPL

---

[4] As noted above, the Dario CPL is missing the words "of an interest in land" following the parenthetical "(including any other security instrument)," which the undersigned deems to constitute a scrivener's error.

because it no longer held "interest in the land" for which the CPL was issued. Id. at 8. The Honorable Federico A. Moreno affirmed and adopted Magistrate Judge Torres' Report and Recommendation. Wall St. Mortg. Bankers, Ltd. v. Attorneys' Title Ins. Fund, Inc., Case No. 1:08-cv-21648 (S.D. Fla. Nov. 10, 2009).

The FDIC argues that Wall St. is inapplicable to this case because the CPL contractual rights were carved out in the P&A Agreement whereby the Gustavo Loan, Note and Mortgage, and the Dario Loan, Note and Mortgage were sold to New BankUnited. However, based on Magistrate Judge Torres' rationale in Wall St., the CPL contractual rights run with the interest in land, which renders the FDIC's carve-out futile.

The FDIC primarily relies on JP Morgan Chase Bank, N.A. v. First Am. Title Ins. Co., 795 F. Supp. 2d 624 (E.D. Mich. 2011) a case brought against First American. In Chase, the court rejected First American's argument that the FDIC lacked standing to assert CPL claims that were purportedly retained by the FDIC (who had been appointed receiver of the original mortgage holder) after the FDIC sold the underlying loan and title insurance policy to Chase. Id. at 631. The Chase court looked at the language of the CPL at issue and concluded that nothing in that language provided that the original mortgage holder (or the FDIC stepping into its shoes) would lose its CPL indemnification rights upon sale of the underlying loan and title insurance policy. Id. This decision from another jurisdiction is not persuasive given Magistrate Judge Torres' contrary interpretation of the language of a Florida compliant CPL.

Therefore, First American is entitled to a judgment as a matter of law that the FDIC lacks standing to assert the CPL breach of contract claims set forth in Counts IV and VIII of the Complaint.

### d. The FDIC did not successfully retain the CPL contractual rights

Assuming, *arguendo*, that the FDIC could retain the CPL contractual rights notwithstanding the sale of its interest in the land, the FDIC did not successfully do so. Initially, the CPL contractual rights are not specifically referenced in the P&A Agreement. Rather, the FDIC claims to have retained them pursuant to Section 3.5(b) of the P&A Agreement, which provides, in pertinent part, that New BankUnited did not acquire any interest, right, action, claim, or judgment against

> (i) . . . [any] Person . . . retained by the Failed Bank . . . arising out of any act or omission of such Person in such capacity, (ii) any underwriter of financial institution bonds, banker's blanket bonds or any other insurance policy of the Failed Bank, . . . or (iv) any other Person whose action or inaction may be related to any loss (exclusive of any loss resulting from such Person's failure to pay on a Loan made by the Failed Bank) incurred by the Failed Bank

but requires that the acts, omissions or other events giving rise to any such claim had to occur prior to the closing of BankUnited on May 21, 2009.

As to Section 3.5(b)(ii), even under the FDIC's own authority, it is well established that CPLs are not insurance policies. See Chase, 795 F. Supp. 2d at 628 ("A closing protection letter is an indemnity agreement, not an insurance policy.").[5]  With regard to Sections 3.5(b)(i) and (iv), it is undisputed that First American did not commit any acts or omissions prior to the closing of BankUnited that would give rise to claims against it.  Rather, the FDIC contends that it retained the right to bring CPL claims against First American for acts allegedly committed by Floridian Title in connection with the closings on the Gustavo Property and the Dario Property. However, Sections 3.5(b)(i) and (iv) only speak of direct claims and make no reference to derivative claims.  Thus, the FDIC did not retain the right to assert CPL claims for the Gustavo

---

[5]  The FDIC contends that this section covers its CPL claims because First American is the issuer of the corresponding title insurance policies.  The FDIC's contention is disingenuous given that its claims are not predicated on the title insurance policies, which it does not even claim to have retained.

Loan and the Dario Loan pursuant to the terms of the P&A Agreement.[6]

### e. The FDIC divested itself of the CPL contract rights

Even if the FDIC had successfully retained the CPL contractual rights by operation of the P&A Agreement, it subsequently divested itself of them. The FDIC assigned "all its right title and interest" in the Gustavo Mortgage to New BankUnited without any express limitations or exclusions, after which New BankUnited obtained title to the Gustavo Property from a foreclosure sale. Moreover, even though the P&A Agreement is mentioned in the FDIC's assignment of the Dario Note and Mortgage to New BankUnited, the recitals in the assignment fail to reiterate the retention of any of the "interests, rights, actions, claims, or judgments" described in the P&A Agreement. On the contrary, the assignment "unconditionally grant[ed], transfer[red] and assign[ed] to [New BankUnited] all of [the FDIC's] right, title and interest in the [Dario] Loan Documents, Rights and Claims." Further, on that same date, New BankUnited assigned the Dario Mortgage and the Dario Note to McCormick 105, LLC, without referencing any limitations arising from the FDIC's purported retention of CPL rights.

Because the FDIC either could not or did not retain its CPL contractual rights with respect to the Gustavo Loan and the Dario Loan, First American is entitled to summary judgment as to Counts IV and VIII of the Complaint for lack of standing.

---

[6] The FDIC notes that the Chase court relied on the FDIC and Chase's agreement that Chase had not acquired the FDIC's CPL rights. Id. at 632. Citing to the Declaration of Anabel I. Nemrow, New BankUnited's General Counsel [D.E. 38-2], the FDIC contends that this Court should similarly adopt the FDIC and New BankUnited's understanding that the P&A Agreement carved out the CPL rights. FDIC's Cross-Motion for Partial Summary Judgment [D.E. 67 at 8 n.3]. However, this proffered extrinsic evidence of intent may not be considered given that the FDIC does not contend that the P&A Agreement is ambiguous. See Solymar Invs., Ltd. v. Banco Santander, S.A., 672 F.3d 981, 991 (11th Cir. 2012) ("It is elementary law that a contract will be construed according to its own clear and unambiguous terms, and that the construction placed upon it by the parties thereto is relevant only in determining the proper construction of a contract when the provisions thereof are ambiguous. If the contract is clear and unambiguous, the legal construction of it follows, regardless of what construction may apparently have been placed upon it by the parties.") (citing Arnold v. First Savs. & Trust Co., 141 So. 608 (1932)).

## 2. *Notice*

Although summary judgment in favor of First American due to the FDIC's lack of standing disposes of the FDIC's claims, the undersigned addresses the notice issue for the sake of completeness.  As noted above, one of the Conditions and Exclusions in the Florida compliant CPL is set forth at paragraph D and states:

> Claims shall be made promptly to [First American] at its principal office . . . .  When the failure to give prompt notice shall prejudice [First American], then liability of [First American] hereunder shall be reduced to the extent of such prejudice.  [First American] shall not be liable hereunder unless notice of loss in writing is received by [First American] within ninety (90) days from the date of discovery of such loss.

In FDIC v. Attorneys' Title Ins. Fund, Inc., Case No. 10-21197-CIV-Huck/Bandstra (S.D. Fla. May 17, 2011), the Honorable Paul C. Huck reviewed this provision and concluded that, for the 90-day notice period to start, the FDIC had to have knowledge of specific acts triggering CPL coverage.  Id. at 11.  Here, the Undisputed Material Facts are that:

> ➢ From 2009 through 2011, the FDIC and MRLG investigated BankUnited's bad loan portfolio but made no specific findings.
>
> ➢ It was not until January 11, 2012, that MRLG requested from New BankUnited the loan files for the Gustavo Loan and the Dario Loan because they involved early payment defaults and large down payments, which seemed inconsistent with an early payment default.
>
> ➢  MRLG received BankUnited's complete loan file for the Gustavo Loan during the period of February 1-7, 2012 and, by that time, the FDIC, through MRLG, knew that Oscar Grisales had signed the HUD-1 Settlement Statements on behalf of RED II and that Gustavo, Dario and Elias Perchik were related.
>
> ➢ Although MRLG internally discussed issuance of a subpoena to Floridian Title on February 2, 2012, the subpoena was not issued until February 21, 2012.
>
> ➢ The FDIC also served administrative subpoenas upon JGB Bank (with whom Floridian Title used to maintain its escrow account) and received those documents on April 26, 2012.

The FDIC contends that it first acquired knowledge of the specific facts giving rise to the

CPL claims on April 26, 2012, when it received Floridian Title's bank records pursuant to the JGB Bank subpoena, notwithstanding its earlier knowledge that Oscar Grisales had signed the HUD-1 Settlement Statements on behalf of RED II and that Gustavo, Dario and Elias Perchik were related. First American contends that the requisite knowledge was obtained by the FDIC, at the latest, by the week of February 1-7, 2012, thereby rendering the FDIC's 90-day notice of CPL claims dated May 10, 2012 untimely, albeit by a few days.

The Undisputed Material Facts recited above do not compel a finding as a matter of law that, as of February 10, 2012 (90 days prior to May 10, 2012), the FDIC had the requisite knowledge under the FDIC v. Attorneys' Title Ins. Fund, Inc. standard formulated by Judge Huck. By the same token, the Undisputed Material Facts do not compel a finding as a matter of law that the FDIC had not acquired the requisite knowledge by February 10, 2012. Therefore, neither party is entitled to summary judgment on this issue.

The FDIC also contends that, even if its notice fell outside the 90 day period, First American must show prejudice in order for the exclusion set forth at Paragraph D of the Florida compliant CPL to apply. The FDIC's interpretation is not supported by the plain language of the provision. A better reading is that Paragraph D: bars liability absent notice of loss within 90 days of its discovery; requires prompt notice within those 90 days; and reduces liability to the extent that the notice is not prompt and causes prejudice.[7] In any event, First American claims to have been prejudiced by the FDIC's lack of prompt notice due to New BankUnited's failure to seek a deficiency judgment against Gustavo Perchik and Dario Perchik. First American's

---

[7] In this regard, the FDIC's reliance on U.S. Bank Nat'l Ass'n v. First Am. Title Ins. Co., No. 2:10-cv-503, 2012 WL 1080876, at *4-6 (M.D. Fla. Mar. 30, 2012) for the proposition that a showing of prejudice by the CPL issuer is always required is misplaced. The court in U.S. Bank did not parse the language of Paragraph D. Rather, it simply addressed First American's contention that it had been totally prejudiced by the lack of timely and adequate notice on the part of the CPL claimant. Id. at *3 ("Defendant First American Title Insurance Company claims it has been totally prejudiced and that Plaintiff U.S. Bank should recover nothing in this action.").

Combined Reply and Response Memorandum [D.E. 81 at 2]; First American's Statement of Additional Facts [D.E. 82 at 8 ¶ 77]. Therefore, notwithstanding its prejudice argument, the FDIC is not entitled to summary judgment on the notice issue.

### 3. *CPL coverage*

As with the notice issue, the undersigned addresses for the sake of completeness First American's request for a judgment as a matter of law on the grounds that the FDIC has failed to come forward with sufficient facts to support its CPL claims. The FDIC responds that, at a minimum, there are facts supporting its CPL claims of fraud or dishonesty by Floridian Title, pursuant to Paragraph 2 of the CPL, based on Floridian Title's handling of BankUnited's funds or documents in connection with the closings on the Gustavo Loan and the Dario Loan. With respect to Floridian Title's handling of the HUD-1 Settlement Statements for both closings, the following facts are in the record:

> ➢ Floridian Title prepared and signed HUD-1 Settlement Statements for the closings on the Gustavo Property and the Dario Property.

> ➢ Floridian Title's attorney and president, Oscar Grisales, signed both HUD-1 Settlement Statements on behalf of RED II.

> ➢ Floridian Title did not disclose to BankUnited the family and business relationships among Gustavo, Dario and Elias Perchik and RED II.

> ➢ The HUD-1 Settlement Statement for the closing on the Gustavo Property reflects a deposit or earnest money in the amount of $90,000.

> ➢ According to the deposition testimony of Floridian Title's corporate representative, Lorena Pardo, Gustavo Perchik's $90,000.00 down payment was paid with two (2) checks totaling $108,000: Check No. 1002 dated August 14, 2007, in the amount of $72,000 and Check No. 1057 dated November 28, 2007, in the amount of $36,000.

> ➢ The HUD-1 Settlement Statement for the closing on the Dario Property reflects a deposit or earnest money in the amount of $85,000.

> ➢ Although a check was deposited on May 11, 2007, for $85,000, for the deposit on the purchase of the Dario Property, Floridian Title's bank records [D.E. 64-24] show that immediately thereafter it wired $85,000 to the account of La Placita, LLC, a company owned by Elias Perchik, whose registered agent was Floridian Title's principal, Oscar Grisales.

Given Grisales' role in the closings and the lack of clarity as to the actual collection of the $90,000 deposit for the Gustavo Property and the $85,000 deposit for the Dario Property, both of which are shown as deposits or earnest money in the corresponding HUD-1 Settlement Statements, it cannot be said that the FDIC's claims of fraud or dishonesty by Floridian Title in handling the HUD-1 Settlement Statements for the two closings are not sustainable as a matter of law. Therefore, First American is not entitled to summary judgment on this issue.

## CONCLUSION

Based on the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS that:

(1)   First American's Motion for Summary Judgment [D.E. 48] be GRANTED solely on the basis that the FDIC lacks standing to pursue the CPL breach of contract claims asserted in Counts IV and VIII and not on the issues of notice and CPL coverage.

(2)   The FDIC's Cross-Motion for Partial Summary Judgment [D.E. 67] be DENIED.

(3)   Judgment be ENTERED in favor of First American and against the FDIC as to Counts IV and VIII of the Complaint.

The parties have **fourteen (14) days** from the date of receipt of this Report and Recommendation within which to serve and file objections, if any, with the Honorable Federico A. Moreno, Chief United States District Judge. See Local Magistrate Rule 4(b). Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. See Resolution Trust Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir.

1993).

RESPECTFULLY RECOMMENDED at Miami, Florida this 24ᵗʰ day of July, 2013.


ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE


cc:     Chief U.S. District Judge Federico A. Moreno
        Counsel of Record