UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-21890-CIV-MORENO/OTAZO-REYES

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver for
BankUnited, FSB,

        Plaintiff,

v.

FLORIDIAN TITLE GROUP, INC., and
FIRST AMERICAN TITLE INSURANCE
COMPANY,

        Defendants.
_____/

## REPORT AND RECOMMENDATION RE: D.E. 46

THIS CAUSE came before the Court upon Defendant Floridian Title Group, Inc.'s ("Floridian Title") Motion for Summary Judgment [D.E. 46]. This case was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Federico A. Moreno, Chief United States District Judge [D.E. 50]. The undersigned held a hearing on this motion on April 26, 2013. For the reasons stated below, the undersigned RESPECTFULLY RECOMMENDS that Floridian Title's Motion for Summary Judgment [D.E. 46] be DENIED.

## PROCEDURAL BACKGROUND

BankUnited, FSB ("BankUnited") was a federally chartered savings bank with its principal place of business in Coral Gables, Florida. BankUnited was in the business of, among other things, funding mortgage loans. On May 21, 2009, BankUnited was closed by the Office of Thrift Supervision and the Federal Deposit Insurance Corporation ("FDIC") was appointed

Receiver for BankUnited pursuant to 12 U.S.C. § 1821.

The FDIC brings this action in its capacity as Receiver for BankUnited in connection with five mortgage loans that were made by BankUnited prior to its demise to: Gustavo Perchik (the "Gustavo Loan"); Dario Perchik (the "Dario Loan"); Mario Berstein (the "Berstein Loan"); Beatriz Gamburg (the "Gamburg Loan") and Ramiro I. Paz Carrazco (the "Carrazco Loan") (collectively, the "Loans").  Defendant Floridian Title served as the closing agent on all five loans.  Defendant First American Title Insurance Company ("First American") issued title insurance policies as to only two of the loans, namely, the Gustavo Loan and the Dario Loan.

The FDIC's claims against Floridian Title are as follows:

| | |
|---|---|
| Count I: | Breach of Contract – Gustavo Loan |
| Count II: | Breach of Fiduciary Duty – Gustavo Loan |
| Count III: | Negligent Misrepresentation – Gustavo Loan |
| Count V: | Breach of Contract – Dario Loan |
| Count VI: | Breach of Fiduciary Duty – Dario Loan |
| Count VII: | Negligent Misrepresentation – Dario Loan |
| Count IX: | Breach of Contract – Berstein Loan |
| Count X: | Breach of Fiduciary Duty – Berstein Loan |
| Count XI: | Negligent Misrepresentation – Berstein Loan |
| Count XIII: | Breach of Contract – Gamburg Loan |
| Count $X_1$: | Breach of Fiduciary Duty – Gamburg Loan |
| Count $XI_1$: | Negligent Misrepresentation – Gamburg Loan |
| Count $XIII_1$: | Breach of Contract – Carrazco Loan |
| Count XIV: | Breach of Fiduciary Duty – Carrazco Loan |
| Count XV: | Negligent Misrepresentation – Carrazco Loan[1] |

Floridian Title has moved for summary judgment as to all the claims against it.  Initially, Floridian Title contends that the FDIC lacks standing to assert any of the claims because it sold the Loans to a third party.  Floridian Title further contends that the FDIC has failed to state any cognizable breach of contract claims in Counts I, V, IX, XIII and $XIII_1$, and that, in any event, the FDIC has suffered no damages arising from Floridian Title's alleged breaches.  As to the

---

[1] Counts IV and VIII are asserted against First American and are not relevant to this Report and Recommendation.  There is no Count XII.  Because the numbers X, XI and XIII were used twice, the subscript (1) has been appended to each second appearance.

2

claims for breach of fiduciary duty asserted in Counts II, VI, X, $X_1$ and XIV, Floridian Title essentially argues that there was no fiduciary relationship between it and BankUnited and, in any event, there is no basis for such claims. As to the claims for negligent misrepresentation asserted in Counts III, VII, XI, $XI_1$ and XV, Floridian Title posits that it did not make any actionable material misrepresentations upon which BankUnited justifiably relied. Floridian Title further argues that all of the tort claims are barred because they are not independent of the contracts between the parties. As more fully set forth below, the undersigned concludes that Floridian Title is not entitled to summary judgment on any of these grounds.

## STANDARD OF REVIEW

A motion for summary judgment should be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Moore ex rel. Moore v. Reese, 637 F.3d 1220, 1232 (11th Cir. 2011). In considering a motion for summary judgment, a court is to view the facts and draw "all reasonable inferences in favor of the nonmoving party." Id. at 1231. "All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party." Pippin v. Nat'l Union Fire Ins. Co., 845 F. Supp. 849, 850 (M.D. Fla. 1994).

## UNDISPUTED MATERIAL FACTS

### A. *The individuals and entities involved in the BankUnited loans*

1.  In 2008, BankUnited funded the Gustavo Loan, the Dario Loan, the Berstein Loan, the Gamburg Loan, and the Carrazco Loan (hereafter, the "Loans").

2.  Elias Perchik was the principal of Real Estate Investment II ("RED II"), the seller

3

in the real estate transactions underlying the Gustavo Loan and the Dario Loan.

3. Elias Perchik was the principal of PE Investments 1, LLC ("PE"), the seller in the real estate transaction underlying the Berstein Loan.

4. Elias Perchik was the principal of Real Estate International Investments and Developers, LLC ("REIID"), the seller in the real estate transaction underlying the Gamburg Loan.

5. Elias Perchik, Gustavo Perchik and Dario Perchik are brothers.

6. Beatriz Gamburg is Elias Perchik's mother.

7. Mario Berstein was Elias Perchik's father-in-law.

8. Gustavo Perchik was the treasurer of RED II and Dario Perchik was the manager.

9. Floridian Title was the closing agent and performed closing services on the Loans.

### B. *Floridian Title's role in the BankUnited loans*

10. Oscar Grisales ("Grisales") is Floridian Title's attorney and president.

11. Grisales and Lorena Pardo ("Pardo") were the only two officers and directors of Floridian Title.

12. Grisales' involvement with the Loans consisted of reviewing the title, reviewing the commitments and closing documents, including the HUD-1 Settlement Statements, and instructing Floridian Title's staff on how to proceed.

13. Pardo knew at the time of the closings on the Dario Loan and the Gustavo Loan that Gustavo Perchik and Dario Perchik were Elias Perchik's brothers.

14. Pardo also knew that Gustavo Perchik was the treasurer of RED II at the time of the closing on the Gustavo Loan, but did not disclose it to BankUnited.

4

15. Floridian Title did not disclose to BankUnited that Dario Perchik was the manager of RED II.

16. Floridian Title knew that Beatriz Gamburg was Elias Perchik's mother.

17. Floridian Title never disclosed to BankUnited that Elias Perchik was related to Gustavo Perchik, Dario Perchik, Beatriz Gamburg and Mario Berstein.

18. Grisales signed the real estate purchase agreement underlying the Gustavo Loan on behalf of RED II.

19. Grisales also signed the HUD-1 Settlement Statement on behalf of RED II for the closing on the Gustavo Loan.

20. Grisales signed the real estate purchase agreement underlying the Dario Loan on behalf of RED II.

21. Grisales also signed the HUD-1 Settlement Statement on behalf of RED II for the closing on the Dario Loan.

22. Grisales signed the real estate purchase agreement underlying the Berstein Loan on behalf PE.

23. Elias Perchik signed the HUD-1 Settlement Statement on behalf of PE for the closing on the Berstein Loan instead of Grisales because he accompanied his father-in-law to the closing.

24. Grisales signed the real estate purchase agreement underlying the Gamburg Loan on behalf REIID.[2]

25. Grisales also signed the HUD-1 Settlement Statement on behalf of REIID for the

---

[2] In this regard, the FDIC's reference to Beatriz Gonzalez is deemed to be to Beatriz Gamburg [D.E. 66 at 11 ¶ 112].

5

closing on the Gamburg Loan.[3]

### C. *Floridian Title's closings on the BankUnited loans*

26. For each of the Loans, Floridian Title was required to prepare and submit a HUD-1 Settlement Statement that disclosed all receipts and disbursements.

27. For each of the Loans, BankUnited's Closing Instructions provided, in part, that the closing agent was "to close and disburse this loan in accordance with these Loan Closing and Funding Instructions . . . [,]" and required that the closing agent contact the BankUnited designated Closer immediately if there were "any deficiencies or discrepancies with the closing instructions or closing documents . . . [.]" [D.E. 66-21, 66-22, 66-23, 66-24, 66-25].

28. For each of the Loans, BankUnited's Closing Instructions required that the closing agent adhere to the following instructions, *inter alia*, when completing the HUD-1 Settlement Statements: (a) no "secondary financing" unless specifically authorized; (b) no credits to be paid on behalf of the borrower(s) without prior authorization from BankUnited's Closing Department; and (c) no cash back allowed to borrower(s) unless specifically authorized within the Funding Authorization section of the closing instructions. Id.

29. Floridian Title certified that the HUD-1 Settlement Statement for each of the Loans was "a true and accurate account of this transaction" and further acknowledged: "It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment[.]" [D.E. 66-26, 66-27, 66-28, 66-29, 1-11]. Floridian Title also signed the respective HUD-1 Settlement Statements, declaring "I have caused, or will cause, the funds to be disbursed in accordance with this statement." Id.

30. The BankUnited Closing Instructions do not state that "The settlement agent must notify us in writing if there are indications that funds to close or the earnest money deposit did

---

[3] Id.

not come from borrower."

31. The HUD-1 Settlement Statement for the closing on the Gustavo Loan reflects that the closing occurred on January 4, 2008.

32. On January 4, 2008, Floridian Title signed the closing instructions for the Gustavo Loan and certified: "I hereby certify that I have read and will comply with all conditions as stipulated on these Loan Closing and Funding Instructions. **Disbursement of the loan proceeds has not occurred**."

33. Floridian Title provided in the HUD-1 Settlement Statement for the closing on the Gustavo Loan that Gustavo Perchik personally paid $90,000 in cash to close.

34. Floridian Title received no deposit from Gustavo Perchik on or around May 4, 2007.

35. The HUD-1 Settlement Statement for the closing on the Dario loan reflects that the closing occurred on January 4, 2008.

36. On January 4, 2008, Floridian signed the closing instructions for the Dario Loan and certified: "I hereby certify that I have read and will comply with all conditions as stipulated on these Loan Closing and Funding Instructions. **Disbursement of the loan proceeds has not occurred**."

37. Floridian Title provided in the HUD-1 Settlement Statement for the closing on the Dario Loan that Dario Perchik personally paid $85,000 in cash to close.

38. A check for $85,000 for the Dario Loan deposit was deposited on May 11, 2007.

39. A review of Floridian's bank account statements show that Floridian almost immediately wired $85,000 out of its account to La Placita, LLC.

40. Elias Perchik was the manager of La Placita, LLC and its registered agent was

7

Floridian Title's president, Oscar Grisales.

41.     The HUD-1 Settlement Statement for the closing on the Berstein Loan reflects that the closing occurred on June 24, 2008.

42.     On June 24, 2008,[4] Floridian signed the closing instructions for the Berstein Loan and certified: "I hereby certify that I have read and will comply with all conditions as stipulated on these Loan Closing and Funding Instructions. **Disbursement of the loan proceeds has not occurred**."

43.     Floridian Title provided in the HUD-1 Settlement Statement for the closing on the Berstein Loan that Mario Berstein personally paid $120,000 in cash to close.

44.     In a letter dated May 19, 2008, Floridian Title stated that the closing agent held the Mario Berstein deposit in the amount of $120,000, and that the deposit had cleared into its account on March 25, 2006.

45.     The HUD-1 Settlement Statement for the closing on the Gamburg Loan reflects that the closing occurred on July 9, 2008.

46.     On July 9, 2008, Floridian signed the closing instructions for the Gamburg Loan and certified: "I hereby certify that I have read and will comply with all conditions as stipulated on these Loan Closing and Funding Instructions. **Disbursement of the loan proceeds has not occurred**."

47.     Floridian provided in the HUD-1 Settlement Statement for the closing on the Gamburg Loan that Beatriz Gamburg personally paid $120,000 cash to close.

48.     The HUD-1 Settlement Statement for the closing on the Carrazco Loan reflects that the closing occurred on August 13, 2008.

---

[4] The FDIC incorrectly gives this date as July 9, 2008 [D.E. 66 at 14 ¶ 146].

49. On August 13, 2008, Floridian signed the closing instructions for the Carrazco loan and certified: "I hereby certify that I have read and will comply with all conditions as stipulated on these Loan Closing and Funding Instructions. **Disbursement of the loan proceeds has not occurred**."

50. Floridian Title provided in the HUD-1 Settlement Statement that Ramiro I. Paz Carrazco personally paid $129,800 and $99,816.99 cash to close.

51. Pursuant to the Closing Instructions, BankUnited performed audits of the loan files for each of the five loan transactions after the closings and no deficiencies were raised.

### D. *First American's training materials*

52. First American provided title insurance in connection with the real estate transactions underlying the Gustavo Loan and the Dario Loan.

53. First American created and distributed training materials for its closing agents on how to detect and prevent mortgage fraud, and it provided access to these materials to First Floridian.

54. According to First American, the closing agent is the "eyes and ears of the lender."

55. First American's training materials provided that "[b]efore closing, [a closing agent should] verify that [it] ha[s] received the lender's proceeds, as well as all funds due from the buyer, drawn from the buyer's account."

56. The training materials provided that "any unusual cash payouts requested or indicated by the parties" should be disclosed by the closing agent, in writing.

57. The training materials provided that a closing agent should "disclose to lender in writing [] if you are aware the transaction is not 'arm's length.'"

58. The training materials provided that: "No Cash In is a type of mortgage fraud which takes place when individuals are purchasing property. The buyer and seller contract for an over-inflated sales price, with the difference to be paid to the buyer at or after closing . . . . One more thing to watch for is borrowed down payments which are disguised by fraudulent gift letters. If you become aware of any unusual cash payouts to the buyer, exercise great caution and make sure you disclose them to the lender in writing."

59. The training materials provided that "Preventing mortgage fraud is not just a matter of following the lender's closing instructions. If [closing agents] become aware of unethical and/or illegal conduct taking place around [them], [the agents] should take action against it. If [agents] fail to take that required action, [they] may become accomplices to any crimes being committed and may therefore face criminal prosecution."

60. The training materials provided that the HUD-1 Settlement Statement "MUST ALWAYS reflect what actually took place in the transaction. If it doesn't match what really happened, [the closing agent] cannot close, no matter who says. . . ."

61. The training materials provided that "The arch-enemy of people committing mortgage fraud is disclosure. The [HUD-1] provides one of [a closing agent's] prime opportunities to make sure that all material facts of the transaction are disclosed to all parties, including the lender!"

E. *The FDIC's Receivership*

62. In or around May 2009, BankUnited was closed and the FDIC was appointed Receiver for BankUnited.

63. On or around May 21, 2009, the FDIC sold certain BankUnited assets to BankUnited N.A. ("New BankUnited") pursuant to a Purchase and Assumption Agreement (the

10

"P&A Agreement") [D.E. 66-17].

64. Section 3.5 of the P&A Agreement, provides, in relevant part: "[New BankUnited] does not purchase, acquire or assume, . . . (b) any interest, right, action, claim, or judgment against (i) . . . any Person . . . retained by the Failed Bank . . . arising out of any act or omission of such Person in such capacity, (ii) . . . any other insurance policy of the Failed Bank, . . . or (iv) any other Person whose action or inaction may be related to any loss[.]" Id.

65. The FDIC understands and interprets the P&A Agreement to provide that the claims in this action against Floridian Title were retained by the FDIC and New BankUnited has stated unequivocally that, pursuant to the P&A Agreement, the FDIC retained and still owns those claims.

66. After a foreclosure, New BankUnited sold the real estate property underlying the Gustavo Loan to Raymond C. Griffis, Jr.

67. The real estate property underlying the Gustavo Loan was found to have "Chinese Drywall" which significantly reduced the market value of the property.

68. On December 9, 2011, the FDIC executed an Assignment of the Dario Loan and the underlying mortgage to New BankUnited, who, in turn, assigned them to McCormick 105, LLC.

69. The real estate property underlying the Gamburg Loan was sold for $41,639.67 net to New BankUnited.

70. New BankUnited approved a "short sale" of the Carrazco property for $145,579.04 net to the bank.

71. The real estate properties underlying the Gustavo Loan, the Dario Loan, the Berstein Loan and the Gamburg Loan were all located in the same townhouse development

11

which lacked a homeowner's association, thereby making them less desirable properties.

## DISCUSSION

The undersigned first addresses Floridian Title's contention that the FDIC lacks standing to assert any of its claims because it sold the Loans to New BankUnited. Finding no merit in this argument, the undersigned considers in turn Floridian Title's arguments that it is entitled to summary judgment as to the breach of contract claims, the breach of fiduciary duty claims and the negligent misrepresentation claims.

### 1. *Standing*

The Undisputed Material Facts establish that, after it was appointed Receiver for BankUnited, the FDIC sold certain BankUnited assets to New BankUnited pursuant to the P&A Agreement. As set forth above, Section 3.5 of the P&A Agreement, provides, in relevant part: "[New BankUnited] does not purchase, acquire or assume, . . . (b) any interest, right, action, claim, or judgment against (i) . . . any Person . . . retained by the Failed Bank . . . arising out of any act or omission of such Person in such capacity, (ii) . . . any other insurance policy of the Failed Bank, . . . or (iv) any other Person whose action or inaction may be related to any loss[.]" Floridian Title acknowledges that, pursuant to this provision, the FDIC purports to have retained the claims asserted against Floridian Title in this action. See Reply [D.E. 83 at 5].[5]

Relying solely on Wall St. Mortg. Bankers, Ltd. v. Attorneys' Title Ins. Fund, Inc., Case No. 1:08-cv-21648 (S.D. Fla. Sept. 9, 2009), Floridian Title argues that the FDIC could not have retained the claims against it as a matter of law. However, Wall St. is not dispositive of the FDIC's standing with respect to its claims against Floridian Title. As more fully discussed in the

---

[5] Given this acknowledgment, the undersigned need not consider the undisputed fact that the FDIC and New BankUnited interpret the P&A Agreement in the same fashion.

12

undersigned Report and Recommendation on First American's motion for summary judgment,[6] the Wall St. case interpreted the language of the Florida form of Closing Protection Letters ("CPLs"), which made it relevant to the CPL claims for breach of contract the FDIC purportedly retained against First American. Nothing in Wall St. supports Floridian Title's contention that it bars the FDIC's purported retention of its claims against Floridian Title, which are not based on CPLs. Therefore, Floridian Title is not entitled to summary judgment on the basis of the FDIC's lack of standing.

### 2. *The breach of contract claims*

The FDIC alleges that Floridian Title breached BankUnited's Closing Instructions for each of the Loans, which are the contracts at issue in the claims for breach of contract asserted in Counts I, V, IX, XIII and XIII$_1$. It is undisputed that, as to each of the Loans, Floridian Title:

- ➤ certified on the date of each closing that it had read and would comply with all conditions stipulated on the Closing Instructions;

- ➤ was required by the Closing Instructions to prepare and submit HUD-1 Settlement Statements that disclosed all receipts and disbursements;

- ➤ provided in each of the HUD-1 Settlement Statements that the borrower had personally paid the cash to close amounts; and

- ➤ certified on the date of each closing that each such HUD-1 Settlement Statement was "a true and accurate account of this transaction."

The FDIC has adduced facts supporting its contention that the HUD-1 Settlement Statements prepared by Floridian Title were not accurate accounts of the transactions due to irregularities with the cash to close amounts that Floridian Title certified had been paid by each of the borrowers.[7] On this basis alone, Floridian Title is not entitled to a judgment as a matter of law

---

[6] See Report and Recommendation RE: D.E. 48 & 67, issued contemporaneously herewith.
[77] See FDIC's Statement of Additional Material Facts [D.E. 66] at ¶¶ 135-38 for the Gustavo Loan; ¶¶ 141-45 for the Dario Loan; ¶¶ 148-51 for the Berstein Loan; ¶¶ 154-155 for the Gamburg Loan; and ¶¶ 159-60 for the Carrazco Loan.

that it did not breach the Closing Instructions for each of the Loans.

Floridian Title's alternative argument is that the FDIC cannot show that it sustained damages flowing from Floridian Title's alleged breaches. According to Floridian Title, the losses that the FDIC claims to have suffered on the Loans are identical to and limited by those that would be pursued in a foreclosure action. At the undersigned's direction, the FDIC filed a Notice of Supplemental Case Authority on this issue and the cases cited by the FDIC impugn this contention [D.E. 109]. Moreover, although it is undisputed that some of the properties underlying the Loans suffered deleterious effects, such as Chinese drywall and a non-functioning homeowners' association, those matters go to the FDIC's quantum of damages, not its entitlement to recover damages.

Based on the foregoing considerations, summary judgment in favor of Floridian Title as to the breach of contract claims is not appropriate.

### 3. *The claims for breach of fiduciary duty*

Floridian Title argues that there is no fiduciary relationship between it and BankUnited because the Closing Instructions did not create an express relationship and the requisite elements for a relationship implied at law are not met. See Reply [D.E. 83 at 11] (citing Real Estate Value Co., Inc. v. Carnival Corp., 92 So.3d 255, 262 (Fla. 3d DCA 2012)).

However, it is undisputed that Floridian Title acted as BankUnited's closing agent for each of the Loans. "Agency is [a] fiduciary relationship. . . ." Cheney v. IPD Analytics, L.L.C., No. 08-23188-CIV, 2009 WL 1298405, at * 5 (S.D. Fla. Apr. 16, 2009). Therefore, a fiduciary relationship did exist between Floridian Title and BankUnited.

Additionally, there is record evidence supporting the FDIC's claims for breach of fiduciary duty. As BankUnited's closing agent, Floridian Title had "a duty to disclose to [its]

principal all material facts relevant to the agency." SMP, Ltd. v. Syprett, Meshad, Resnick & Libe, P.A., 584 So. 2d 1051, 1054 (Fla. 2d DCA 1991). According to the FDIC, Floridian Title failed to make at least one such material disclosure, namely, that the Loans transactions were not arms-length. The relationships among Elias Perchik, Gustavo Perchik, Dario Perchik, Mario Berstein, Beatriz Gamburg and Oscar Grisales are undisputed and it is also undisputed that Floridian Title did not disclose them to BankUnited.

Because it cannot be said as a matter of law that Floridian Title did not owe BankUnited a fiduciary duty and did not breach such duty, Floridian Title is not entitled to summary judgment as to the FDIC's claims for breach of fiduciary duty.[8]

### 4. *The negligent misrepresentation claims*

The FDIC also predicates its negligent misrepresentation claims on, *inter alia*, Floridian Title's alleged failure to disclose that the Loans transactions were not arms-length. Floridian Title argues that, absent a fiduciary relationship, it had no duty to make such disclosure. See Reply [D.E. 83 at 13] (citing Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp., 850 So. 2d 536, 541 (Fla. 5th DCA 2003)). Because the undersigned has concluded that a fiduciary relationship did exist, this argument fails.

Floridian Title also argues that the FDIC cannot show justifiable reliance on Floridian Title's alleged misrepresentations because it was in a better position than Floridian Title to ascertain those facts. See Reply [D.E. 83 at 14] (citing Allocco v. City of Coral Gables, 221 F. Supp. 2d 1317, 1355 (S.D. Fla. 2002)). However, the Alloco court granted summary judgment in favor of the defendant on plaintiffs' negligent misrepresentation claims on more stringent grounds, namely, that the falsity of the defendant's statements was not only discoverable but was

---

[8] Given this conclusion, the undersigned need not address the FDIC's contention that the training materials on how to detect and prevent mortgage fraud distributed by First American to its closing agents provide additional support for the FDIC's breach of fiduciary duty claims.

15

actually known by plaintiffs. Id. at 1357-59. Therefore, Alloco does not support Floridian Title's broader contention.

Based on the foregoing, Floridian Title is not entitled to a judgment as a matter of law on the FDIC's negligent misrepresentation claims.

### 5. *The economic loss rule*

In Tiara Condominium Ass'n, Inc. v. Marsh & McLennan Cos., the Florida Supreme Court expressly held that "the economic loss rule applies only in the products liability context." 110 So. 3d 399, 407 (Fla. 2013). Therefore, Florida's economic loss rule does not bar the claims for breach of fiduciary duty and negligent misrepresentation. In its Reply, Floridian Title argues that the tort claims are barred nonetheless because they are inextricably intertwined with the breach of contract claims. See Reply [D.E. 83 at 15] (citing Tiara, 110 So. 3d at 408 (Pariente, J. concurring)). As discussed above, however, Floridian Title's role as closing agent for BankUnited gives rise to a fiduciary relationship independently of the terms of the Closing Instructions. Moreover, the FDIC's claims for breach of fiduciary duty and negligent misrepresentation are independent of the Closing Instructions because they are based, *inter alia*, on Floridian Title's alleged failure to disclose that the Loans transactions were not arms-length. Therefore, the tort claims are not inextricably intertwined with the breach of contract claims as a matter of law.

## CONCLUSION

Based on the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS that Floridian Title's Motion for Summary Judgment [D.E. 46] be DENIED.

The parties have **fourteen (14) days** from the date of receipt of this Report and Recommendation within which to serve and file objections, if any, with the Honorable Federico

A. Moreno, Chief United States District Judge. See Local Magistrate Rule 4(b). Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. See Resolution Trust Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

RESPECTFULLY SUBMITTED at Miami, Florida this 24th day of July, 2013.

*[signature]*
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc: Chief U.S. District Judge Federico A. Moreno
     Counsel of Record