UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number:  12-21890-CIV-MORENO**

FEDERAL   DEPOSIT   INSURANCE
CORPORATION, as Receiver for BankUnited,
FSB,

        Plaintiff,

vs.

FLORIDIAN TITLE GROUP INC. and FIRST
AMERICAN TITLE INSURANCE COMPANY,

        Defendants.
_____/

## ORDER ADOPTING MAGISTRATE'S REPORT AND RECOMMENDATION AND DENYING DEFENDANT FLORIDIAN TITLE GROUP'S MOTION FOR

## SUMMARY JUDGMENT

THE COURT denies the Defendant's Motion for Summary Judgment. Magistrate Judge Otazo-Reyes filed a Report and Recommendation. The Court has reviewed the entire file and record, has made a *de novo* review of the issues including the objections to the Magistrate Judge's Report and Recommendation, and adopts the Report and Recommendation.

### I. Background

The Plaintiff filed a 17-count complaint against Floridian Title Group, Inc. ("Floridian Title") and First American Title Insurance Co.[1] The case stems from five mortgage loans made by BankUnited, FSB. BankUnited was closed by the Office of Thrift Supervision on May 21, 2009, and

---

[1] Plaintiff Federal Deposit Insurance Corporation and Defendant First American Title Insurance Company have also filed cross-motions for summary judgment, but these motions were the subject of a separate Report and Recommendations and will be addressed in a separate Order.

the FDIC was appointed as the receiver for BankUnited. The five mortgage loans at issue were made to Gustavo Perchik (the "Gustavo Loan"), Dario Perchik (the "Dario Loan"), Mario Berstein (the "Berstein Loan"), Beatriz Gamburg (the "Gamburg Loan"), and Ramiro I. Paz Carrazco (the "Carrazco Loan"). Defendant Floridian Title served as the closing agent on all five transactions. The properties located in all but the Carrazco Loan were located at the same townhouse development.

The basic allegations against Floridian Title are that Floridian Title knew that four of the five transactions at issue were not made at arms-length, yet it did not report this to BankUnited despite being required to do so as BankUnited's closing agent; that Floridian Title violated the provisions in BankUnited's Closing Instructions which provided in relevant part that the closing agent was required to adhere to the instructions of "(a) no 'secondary financing' unless specifically authorized, (b) no credits to be paid on behalf of the borrowers without prior authorization from BankUnited's closing department, and (c) no cash back allowed to borrower(s) unless specifically authorized within the Funding Authorization section of the closing instructions;" and that Floridian Title filled out false HUD-1 forms that contained material misrepresentation. Based on the Report & Recommendations Undisputed Facts,[2] Elias Perchik was the principal of Real Estate Investment II ("RED II"), the seller involved in the Gustavo and Dario Loans, and he was also the principal of PE Investments 1, LLC ("PE"), the seller in the transaction underlying the Berstein Loan. Elias Perchik was also the principal of Real Estate International Investments and Developers, LLC ("REIID"), the seller in the transaction underlying the Gamburg loan. Elias Perchik is the brother of buyers Gustavo

---

 Defendant Floridian disputes many of the facts in the Undisputed Facts section of the Report and Recommendations in its Objections to the R&R. As Plaintiff points out, however, these disputes were made for the first time in the Objections, and the facts were not disputed at the time the parties filed their respective statements of material facts. At best, as Plaintiff argues, these disputes demonstrate that summary judgment is inappropriate.

Perchik and Dario Perchik, the son of buyer Beatriz Gamburg, and the son-in-law of buyer Mario Berstein. Floridian Title's President is Oscar Grisales, and he and Lorena Pardo were Floridian Title's only officers and directors.

Grisales reviewed the title, reviewed the commitments and closing documents, including the HUD-1 Settlement Statements, and instructed Floridian Title's staff on how to proceed regarding all five transactions. The Plaintiff alleges, and the Report and Recommendation states, that Pardo knew at the time of closings on the Dario Loan and the Gustavo Loan that Gustavo, Dario, and Elias Perchik were brothers. Similarly, the Report and Recommendation states that Pardo knew that Gustavo Perchik was the treasurer of RED II at the time of the closing of the Gustavo Loan, but she did not report it to BankUnited, and the Report and Recommendation further provides that Floridian Title knew of the familial ties of the parties but did not report this knowledge to BankUnited. Floridian Title certified that the HUD-1 Settlement Statement for each loan was "a true and accurate account of the transaction." Floridian Title signed the HUD-1 Settlement Statements, declaring "I have caused, or will cause, the funds to be disbursed in accordance with this statement."

Regarding the Gustavo Loan, Plaintiff has provided evidence that the HUD-1 Settlement Statement reflects that Gustavo Perchik paid $90,000 to close. However, Plaintiff has provided evidence that Floridian Title received no payment from Gustavo Perchik on or around the time the payment was purportedly paid. Regarding the Dario loan, the HUD-1 statement shows that Floridian Title received $85,000 to close the transaction on May 11, 2007, but Plaintiff has provided evidence showing that Floridian Title almost immediately wired $85,000 to La Placita, LLC a company whose manager was allegedly Elias Perchik, and whose registered agent was Grisales, the President of Floridian Title. Regarding the Berstein Loan, Floridian Title provided in the HUD-1 Settlement

Statement that Berstein personally paid $120,000 to close the transaction. In a letter dated May 19, 2008, Floridian Title stated that Berstein had deposited the had cleared into its account on March 25, 2006 - more than two years before the transaction closed. Finally, regarding the Carrazco loan, Plaintiff contends that Floridian misrepresented that Ramiro I. Paz Carrazco and Helena Gonzales Traconi personally paid $129,800 with $99,816.99 to close. Plaintiff has produced evidence that a wire transfer was altered to show that $120,000 was transferred from the borrower to Floridian's account on August, 9, 2006 - years before the transaction closed.

In May 2009, BankUnited was closed and the FDIC stepped in as receiver for BankUnited. On May 21, 2009, the FDIC sold certain BankUnited assets to BankUnited, N.A., ("New Bank") pursuant to a Purchase and Assumption Agreement. Section 3.5 of the Purchase and Assumption Agreement provides in relevant part that "[New Bank] does not purchase, acquire or assume, . . . (b) any interest, right, action, claim, or judgment against (i) . . . any Person . . . retained by the Failed Bank . . . arising out of any act or omission of such Person in such capacity, (ii) . . . any other insurance policy of the failed Bank, . . . or (iv) any other Person whose action or inaction may be related to any loss." The FDIC maintains the position that this section demonstrates that the claims against Floridian Title were not sold to New Bank and were retained by the FDIC. As detailed in the Report & Recommendations, the FDIC sold or otherwise divested itself of all the properties at issue.

Floridian Title moved for summary judgement **[D.E. 46]**. The motion was referred to Magistrate Judge Otazo-Reyes. Judge Otazo-Reyes filed her Report and Recommendations **[D.E. 126]** recommending that this Court deny Defendant Floridian Title's Motion for Summary Judgment. Defendant Floridian Title filed its Objections to the Report and Recommendations **[D.E. 127]**. The Plaintiff filed its Response **[D.E. 130]**.

-4-

## III. Discussion

Floridian Title raises numerous arguments as to why it is entitled to summary judgment. First, Floridian Title claims that the FDIC lacks standing to assert any claims because it sold the loans to a third party. It next claims it is entitled to summary judgment on the FDIC's breach of contract claims because failing to collect a deposit is not the same thing as what it was required to do under the Closing Instructions, which prohibited secondary financing, credits, and cash back to borrowers. It further contends that, on the breach of contract claims, even if it breached, it is entitled to summary judgment because neither BankUnited nor the FDIC suffered any damages. Regarding FDIC's claims of breach of fiduciary duty, Defendant Floridian Title argues that it the disclosures at issue in this case were not required to be made under the duties it undertook. Regarding Plaintiff's claims for Negligent Misrepresentation, Floridian Title claims that the there is no "competent, credible summary judgment evidence that Floridian made any misrepresentation of material fact," and, even if Floridian Title did make misrepresentations of material fact, BankUnited's reliance on those misrepresentations was not justified. Finally, Defendant claims that the economic loss rule bars all Breach of Fiduciary Duty and Negligent Misrepresentation claims.

Floridian does not address in either its motion for summary judgment or its objections to the Report & Recommendation the crux of the FDIC's argument: that Floridian Title breached the contract by providing false HUD-1 forms and that Floridian Title failed to disclose that the transactions were not conducted at arm's length due to the fact that the parties to the transactions that BankUnited provided loans for were related by familial or business ties, and that Floridian Title knew of the nature of these relationships. The Court notes that Floridian Title devotes nearly half of its Objections to the Report and Recommendations disputing facts that the Magistrate Judge

characterized as "undisputed." As Plaintiff has pointed out, these facts were indeed undisputed by

Defendant Floridian Title at the time the parties filed their statements of material facts. Additionally,

these issues of fact only further show that summary judgment is not warranted. This Court finds

nothing wrong with the Magistrate Judge's discussion of Undisputed Facts.

### A. Summary Judgment Standard

Summary judgment is authorized where there is no genuine issue of material fact. Fed. R.

Civ. P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the

absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The party opposing the motion for summary judgment may not simply rest upon mere allegations

or denials of the pleadings; the non-moving party must establish the essential elements of its case

on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986);

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The nonmovant must

present more than a scintilla of evidence in support of the nonmovant's position. A jury must be able

reasonably to find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

### B. Standing

Plaintiff's sole contention that Plaintiff lacks standing comes from its reliance on *Wall St.*

*Mortg. Bankers, Ltd. v. Attorneys' Title Ins. Fund, Inc.*, Case No. 1:08-CV-1648-Moreno (S.D. Fla.

Sept. 9, 2009). In *Wall Street*, the Magistrate Judge recommended that the Court grant summary

judgment to Defendant where the Plaintiff had sold the properties covered by the Closing Protection

Letters where the Closing Protection Letters specified that they provided "protection in connection

with closing of real estate transaction in which you are to be the lessee or purchaser of an interest

in land or a lender secured by a mortgage (including any other security instrument) of an interest in

land." *See id.* at 7. The Court adopted the Report and Recommendations, and granted summary judgment because, after having sold the property, Plaintiff no longer had "an interest in land" and was not in privity of contract, and thus, did not have standing.

*Wall Street* is clearly factually distinguishable and provides Defendant Floridian Title no support. In the case at bar, Plaintiff, by virtue of Section 3.5 of the Purchase and Assumption Agreement, purports to retain the claims against Defendant Floridian Title. Section 3.5 of the Purchase and Assumption Agreement provides in relevant part that "[New Bank] does not purchase, acquire or assume, . . . (b) any interest, right, action, claim, or judgment against (i) . . . any Person . . . retained by the Failed Bank . . . arising out of any act or omission of such Person in such capacity, (ii) . . . any other insurance policy of the failed Bank, . . . or (iv) any opther Person whose action or inaction may be related to any loss." Having retained these claims, Plaintiff has standing to bring this action against Defendant Floridian Title.

### C. Breach of Contract

In Counts I, V, IX, XIII, and $XIII_1$[3], Plaintiff alleges that Defendant Floridian Title breached BankUnited's Closing Instructions for each of the loans, which are the contracts at issue. Regarding these counts, Defendant Floridian Title argues that failing to collect a deposit is not the same thing as it was required to do under the Closing Instructions, which prohibited secondary financing, credits, and cash back to borrowers. It further contends that, on the breach of contract claims, even if it breached, it is entitled to summary judgment because neither BankUnited nor the FDIC suffered any damages.

---

[3] In the Complaint, Plaintiff uses the number X, XI, and XIII twice. For clarity, this Court adopts the Magistrate's use of the subscript (1) to the second appearance of each number.

In Florida, the elements for a breach of contract are (1) a valid contract, (2) a material breach, and (3) damages. *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999); *Leahy v. Batmasian*, 960 So.2d 14, 18 (Fla. Dist. Ct. App. 2007). "Generally, so long as Plaintiff has produced some evidence of its injury, the factual determination of damages is one for the jury." *Action Nissan Inc. v. Hyundai Motor Am.*, 617 F.Supp.2d 1177, 1203 (M.D. Fla. 2008).

The FDIC has presented evidence that the BankUnited's Closing Instructions were a valid contract. Under the Closing Instructions, Floridian Title was "engaged to close and disburse this loan in accordance with these Loan documents." Defendant Floridian Title was purportedly required to adhere to the instructions of "(a) no 'secondary financing' unless specifically authorized, (b) no credits to be paid on behalf of the borrower's without prior authorization from BankUnited's closing department, and (c) no cash back allowed to borrower(s) unless specifically authorized within the Funding Authorization section of the closing instruction." The Closing Instructions also provided that Floridian Title was required to complete a HUD-1 Settlement Statement. The Closing Agent "certif[ied] that [she has] read and will comply with all conditions as stipulated on these Loan Closing Documents and Funding Instructions. **Disbursement of the loan proceeds has not occurred.**" On the HUD-1 Settlement Statements, Floridian Title certified that the statement "is a true and accurate account of this transaction. I have caused, or will cause, the funds to be disbursed in accordance with the statement."

Defendant Floridian Title argues that Plaintiff has presented no evidence that it breached the contract. It first argues in its Objections that "the plain meaning of "secondary financing," "credits," and "cash back" do not in any way cover the situation where a closing agent fails to collect a deposit. This argument is misleading, disingenuous, and does not address relevant issues. Plaintiff has not

argued that Defendant Floridian merely failed to collect a deposit. Plaintiff's primary argument is that Floridian breached its promise to prepare and submit a HUD-1 statement and that it breached its certification on the HUD-1 statement that the information provided was true and accurate. Plaintiff has provided evidence that the HUD-1 statements were not accurate. Thus, Plaintiff has provided evidence of a breach of the valid contract.

Floridian Title further argues that it was not in breach because the contract between itself and BankUnited did not arise until the Closing Instructions were signed, the down payments were to be made before the Closing Instructions were signed, and thus, Floridian Title cannot be in breach of a contract where the alleged breach occurred before the contract formed. Again, Floridian Title bases its entire argument on issues that are at best tangentially related to the claims before the Court. Under the Closing Instructions, Floridian Title was required to submit a HUD-1 Settlement Statement. On the HUD-1 Settlement Statements, Floridian Title promised that they were true and accurate. Plaintiff has produced evidence that the HUD-1 Settlement Statements were not true and accurate. Thus, the temporal relationship between the receipt or promised receipt of the down payments and Floridian Title's signing of the Closing Instructions is far outside of the realm of relevance.

Defendant argues that FDIC, as assignee of BankUnited, has suffered no damages or the damages suffered are identical to ones that can be pursued in a foreclosure action. On this point, a recent case decided in the Central District of California is instructive. In *Fed. Deposit. Ins. Corp. v. First Am. Title Ins. Co.*, the FDIC brought claims for breach of contract against its title insurance company. *Fed. Deposit. Ins. Corp. v. First Am. Title Ins. Co.* 2011 WL 3737435 at *1 (C.D. Cal. August 24, 2011). The FDIC argued that the failure to make disclosures as to the buyer's previous transactions and the failure to pick up on certain red flags led it to make a loan it would not have

otherwise made. *See id.* at *9. The court held that "the FDIC's evidence indicating it would not have entered into the loan had it known of the other transactions more than adequately meets this standard [of demonstrating enough damages to survive summary judgment.]" *Id.* at *10. Similarly, the Middle District of Florida, in a case with substantially similar facts to those of the case at bar, permitted an action for breach of contract to proceed past the motion to dismiss stage where the closing agent handled numerous closings for Plaintiff, permitted secondary financing, and failed to disclose a material misrepresentation. *Cf. Lehman Bros. Holdings, Inc. v. Hiroda*, 2007 WL 1471690 at * 1, 6 (M.D. Fla. May 21, 2007).

In the case at bar, Plaintiff has argued that the failure to collect a down payment and material misrepresentations caused it to lend to borrowers it would not have otherwise have lended to and that it was damaged when the borrowers in what it claims was a mortgage fraud scheme defaulted. These are enough allegations of damages to survive a motion for summary judgment.

Finally, Defendant argues that the properties underlying the loans suffered detrimental effects that were unknowable to Defendant, and that it should thus be excused. In its motion for summary judgment, Defendant creates a convoluted analysis comparing the unforeseeable string of events to the traditional Passover Song "Chad Gadya" - "One Little Goat"; in its Objections to the Report and Recommendations, the comparison shifts to a Rube Goldberg Machine.[4] While the imagery

---

[4] The Defendant's Objections read:
One uncollected deposit. One uncollected deposit left the borrower with insufficient "skin-in-the game." The real estate down turn came that devalued the property of the borrower with insufficient "skin-in-the game" because the closing agent failed to collect the deposit. The property devaluation led the borrower to try to rent the premises. The attempted premises rental led to the discovery of Chinese Drywall further devaluing the property and preventing its rental. The reduction in anticipated income from the property declining in value led to the inability of the borrower to make the mortgage payments. The inability of the

Defendant paints may prove powerful when put to music and sung by hard-times balladeers like Bruce Springsteen or Waylon Jennings, its arguments are not persuasive in a court of law. While the issues that afflicted the underlying properties, such as "Chinese Drywall" or the Real Estate Crisis may prove to be mitigating factors, they do not excuse Defendant's breach. *See Action Nissan, Inc. v. Hyundai Motors Am.*, 617 F.Supp.2d at 1203.

For the foregoing reasons, Defendant is not entitled to summary judgment on the breach of contract claims.

### D. Breach of Fiduciary Duty

In Counts II, VI, X, $X_1$, and XIV, Plaintiff claims Floridian Title breached its fiduciary duty. Defendant argues that any duty must be enumerated in the contract.

The elements of a claim for breach of fiduciary duty are (1) existence of a fiduciary duty, (2) breach of that duty, and (3) damages proximately caused by that breach. *Gracey v. Eaker*, 837 So.2d 348, 353 (Fla. 2002)."Agency is the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control, and agent manifests assent or otherwise consents so to act." *Cheney v. IPD Analytics, L.L.C.*, 2009 WL 1298405 at *5 (S.D. Fla. Apr. 16, 2009) (*citing* Restatement (Third) of Agency § 1.01 (2006)). "Typically, an agent has a duty to disclose to a principal all material facts relevant to the agency." *SMP, Ltd. v. Syprett, Meshad, Resnick & Libe, P.A.*, 584 So.2d

---

borrower to make the mortgage payments led to the borrower's default. The borrower's default led to the bank's failure. The bank's failure led to the FDIC's takeover. The FDIC's take-over led to a Loss-Share Agreement with New BankUnited. The Loss Share Agreement with new Bank United  gave that bank no incentive to try to obtain deficiency judgments against defaulting borrowers or to try to obtain market values for the property. All that foreseeable from one allegedly uncollected deposit?

1051, 1054 (Fla. Dist. Ct. App. 1991).

It is undisputed that Defendant Floridian served as Plaintiff's closing agent. As an agent, Floridian title owed a fiduciary duty to the Plaintiff. *See Cheney v. IPD Analytics, L.L.C.*, 2009 WL 1298405. The evidence shows that Floridian Title failed, at a minimum, to disclose that the Loan transactions were not negotiated at arms-length. If true, this would permit a reasonable trier of fact to find that Floridian Title breached its fiduciary duty.

Defendant Floridian Title quotes Judge Ungaro in *Vallina v. Mansiana Ocean Residences* for the proposition that it owes no fiduciary duty. *Vallina v. Mansiana Ocean Residences*, Case No. 1:10-CV-21506 at p. 9 (S.D. Fla. June 17, 2011) (Ungaro, J.). This case, however, is distinguishable on its facts. In that case, Defendant Fidelity was both the escrow agent and the title insurer. Defendant Fidelity became involved in litigation with Defendant Mansiana, and did not disclose this to Plaintiff. The litigation between Plaintiff and Defendant Fidelity in that case arose out of Defendant Fidelity's role as escrow agent, not as title insurer. Judge Ungaro granted the motion to dismiss the breach of fiduciary duty claim because "the existence of litigation relating to Fidelity's role as Mansiana's insurer is not a material fact relevant to Fidelity's role as escrow agent for Plaintiff and Mansiana." *Id.* at 9.

All other arguments raised by Defendant in its objections to the Report and Recommendations regarding fiduciary duty raise additional questions of fact, demonstrating that summary judgment is not appropriate, and will thus not be discussed here.

### D. Negligent Misrepresentation Claims

In Counts III, VII, XI, XI$_1$, and XV, Plaintiff makes claims against Defendant Floridian Title for negligent misrepresentation. Under Florida law, a claim for negligent misrepresentation requires

(1) a misrepresentation of material fact; (2) a represener who either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) a represener who intended to induce another to act on the misrepresentation; and (4) an injury that resulted to a party acting in justifiable relaince upon the misrepresentation." *Coral Gables Dist., Inc. v. Milich*, 992 So.2d 302, 303 (Fla. Dist. Ct. App. 2008). To prevail on a claim for negligent misrepresentation, a plaintiff must show that he justifiably relied on the misrepresentation. *Bankers Trust Co. v. Basciano*, 960 So.2d 773, 778 (Fla. Dist. Ct. App. 2007) (*citing Johnson v. Davis*, 480 So.2d 625, 627 (Fla. 1985). "An action for negligent misrepresentation cannot be maintained if an investigation by the recipient of the information would have revealed the falsity of the information." *Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 696 So.2d 334, 337 (Fla. 1997).

In its objections, Defendant Floridian Title reiterates its argument that *Alloco v. City of Coral Gables* stands for the proposition that Plaintiff's reliance on any misrepresentations were not justifiable because it could have ascertained the information itself. *See Alloco v. City of Coral Gables*, 221 F.Supp.2d 1317, 1357 (S.D. Fla. 2002). However, the Plaintiffs in *Alloco* actually possessed the information that was allegedly misrepresented. *Id.* at 1358-59. Thus, it is clearly distinguishable from the case at bar. The Magistrate Judge rejected this argument, and this Court does as well.

Additionally, other than an unsupported claim in its Motion for Summary Judgment that BankUnited conducted independent investigations and should have discovered the not-at-arm's length nature of the transactions, Defendant Floridian has not directed this Court to any evidence in the voluminous record that would indicate that BankUnited knew of the relationship or that an

investigation would have uncovered it. Thus, its claim for summary judgment on this point should be denied.

### E. Defendant Floridian's Economic Loss Rule Arguments

In its Motion for summary judgment, Defendant Floridian Title argued that the economic loss rule bars the FDIC's Breach of Fiduciary Duty and Negligent Misrepresentation claims. However, as the Magistrate Court correctly noted, the Florida Supreme Court recently held that "the economic loss rule applies only in the products liability context." *Tiara Condominium Ass'n, Inc. v. Marsh & McLennan, Cos., Inc.*, 110 So.3d 399, 407 (Fla. 2013). This case is not a products liability case. Thus, the economic loss rule does not apply.

In its Objections to the Report and Recommendations, Defendant argues that the tort claims are inextricably intertwined with breach of contract claims, and thus are barred. Defendant cites no support for this proposition other than the fact that this legal principle was "formerly embodied in the economic loss rule." Defendant is apparently operating under the assumption that it can unilaterally rebrand the Economic Loss Rule as the Inextricable Intertwining Rule and that the Court will buy this otherwise defective product. The Court will make no such purchase. The Economic Loss Rule applies only in the products liability context and the this Court declines to rename the Economic Loss Rule.

**IV. Conclusion**

Based on the foregoing arguments, the Court adopts the Magistrate's Report and Recommendation. Defendant Floridian Title's Motion for Summary Judgment is hereby DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this 16 day of September, 2013.

FEDERICO A. MORENO
CHIEF UNITED STATES DISTRICT JUDGE

Copies provided to:

United States Magistrate Judge Alicia M. Otazo-Reyes

Counsel of Record