UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 12-21890-CIV-MORENO

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for BankUnited, FSB,

    Plaintiff,

vs.

FLORIDIAN TITLE GROUP INC. and FIRST AMERICAN TITLE INSURANCE COMPANY,

    Defendant.
_____/

## ORDER ADOPTING MAGISTRATE'S REPORT AND RECOMMENDATION, GRANTING DEFENDANT FIRST AMERICAN TITLE INS. CO.'S MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

THE MATTER was referred to the Honorable Alicia M. Otazo-Reyes, United States Magistrate Judge for a Report and Recommendation on Defendant First American Title Ins. Co.'s and Plaintiff's Cross-Motions for Summary Judgment **(D.E. Nos. 48, 67)**, filed on **February 4, 2013** and **April 15, 2013,** respectively. The Magistrate Judge filed a Report and Recommendation **(D.E. No. 125)** on **July 24, 2013**. The Court has reviewed the entire file and record. The Court has made a *de novo* review of the issues that the objections to the Magistrate Judge's Report and Recommendation present, and being otherwise fully advised in the premises, it is

**ADJUDGED** that United States Magistrate Judge Alicia M. Otazo-Reyes' Report and Recommendation **(D.E. No. 125)** on **July 24, 2013** is **AFFIRMED** and **ADOPTED**. Accordingly, it is

**ADJUDGED** that:

(1)  Defendant First American Title Insurance Company's Motion for Summary Judgment is GRANTED.

(2)  Plaintiff's Motion for Summary Judgment is DENIED.

## I. Background

The Plaintiff filed a 17-count complaint against Floridian Title Group, Inc. ("Floridian Title") and First American Title Insurance Co.[1] The case stems from five mortgage loans made by BankUnited, FSB. BankUnited was closed by the Office of Thrift Supervision on May 21, 2009, and the FDIC was appointed as the receiver for BankUnited. The five mortgage loans at issue were made to Gustavo Perchik (the "Gustavo Loan"), Dario Perchik (the "Dario Loan"), Mario Berstein (the "Berstein Loan"), Beatriz Gamburg (the "Gamburg Loan"), and Ramiro I. Paz Carrazco (the "Carrazco Loan"). Defendant First American Insurance Company ("First American") issued Closing Protection Letters ("CPLs") for only two of the loans: the Gustavo Loan and the Dario Loan. Plaintiff's breach of contract claims against First American stem from these CPLs.

Gustavo Perchik, Dario Perchik, and Elias Perchik are brothers. Elias Perchik was the principal of Real Estate Investment II ("RED II"), the seller involved in the Gustavo and Dario Loans. Gustavo Perchik was the treasurer of RED II, and Dario Perchik was the manager of RED II. On May 4, 2007, Gustavo entered into a purchase agreement with RED II to purchase a townhome. On May 10, 2007, Dario entered into a purchase agreement with RED II to purchase a townhome in the same development. The Gustavo Purchase Agreement and Dario Purchase

---

[1]Defendant Floridian Title Group, Inc. filed a Motion for Summary Judgment. This Motion was dealt with in a separate Report and Recommendation, and this Court denied it on September 16, 2013 **(D.E.**

Agreement were provided to BankUnited as part of its loan application. On January 4, 2008, BankUnited made the Gustavo Loan for $280,000, evidenced by a promissory note that was secured by a mortgage on the Gustavo Property. On January 4, 2008, BankUnited made the Dario loan for $280,000, evidenced by a promissory note that was secured by a mortgage on the Dario Property. First American Provided title insurance for both the Dario and Gustavo loans. On December 7, 2007, First American issued a blanket CPL to BankUnited. On January 24, 2008, First American issued a CPL to BankUnited for the Gustavo loan ("Gustavo CPL"). On June 4, 2008, First American issued a CPL to BankUnited for the Dario Loan ("Dario CPL"). Dario Perchik defaulted on his loan on November 1, 2008, and Gustavo Perchik defaulted on the Gustavo Loan on December 1, 2008.

In May 2009, BankUnited was closed and the FDIC stepped in as receiver for BankUnited. On May 21, 2009, the FDIC sold certain BankUnited assets to BankUnited, N.A., ("New Bank") pursuant to a Purchase and Assumption Agreement. Section 3.1 of the Purchase and Assumption Agreement provides

> with the exception of certain assets expressly excluded in Sections 3.5 and 3.6, the Assuming Bank hereby purchases from the Receiver, and the Receiver hereby sells, assigns, transfers, conveys, and delivers to the Assuming Bank, all right, title, and interest of the Receiver in and to all of the assets (real, personal and mixed, wherever located and however acquired) of the Failed Bank whether or not reflected on the books of the Failed Bank as of Bank Closing. Schedule 3.1 attached hereto and incorporated herein sets forth certain categories of Assets purchased hereunder. Such schedule is based upon the best information available to the Receiver and may be adjusted as provided in Article VIII. Assets are purchased hereunder by the Assuming Bank subject to all liabilities for indebtedness collateralized by Liens affecting such Assets to the extent provided in Section2.1. In addition, Assuming Bank is entitled to the option to acquire additional assets and assume agreements as set forth in Sections 4.6, 4.7 and 4.8.

Section 3.5 of the Purchase and Assumption Agreement provides in relevant part that

> The Assuming Bank does not purchase, acquire or assume, or (except as otherwise

expressly provided in this Agreement) obtain an option to purchase, acquire or assume under this Agreement:

(a) any financial institution bonds, banker's blanket bonds, or public liability, fire, or extended coverage insurance policy or any other insurance policy of the Failed Bank...

(b) any interest, right, action, claim, or judgment against (i) any officer, director, employee, accountant, attorney, or any other Person employed or retained by the Failed Bank or any Subsidiary of the Failed Bank on or prior to Bank Closing arising out of any act or omission of such Person in such capacity, (ii) an underwriter or financial institution bonds, banker's blanket bonds or any other insurance policy of the Failed Bank, (iii) any shareholder or holding company of the Failed Bank, or (iv) any other Person whose action or inaction may be related to any loss (exclusive of any loss resulting from such Person's failure to pay on a Loan made by the Failed Bank) incurred by the failed bank; provided, that for the purposes hereof, the acts, omissions or other events giving rise to any such claim shall have occurred on or before Bank Closing...

The Gustavo Mortgage was explicitly assigned to New BankUnited on August 10, 2009. On December 9, 2011, the FDIC executed an assignment stating that, pursuant to the May 21, 2009 Purchase and Assumption Agreement, the Dario Loan, Dario Note, and Dario Mortgage were assigned to New BankUnited, and that the FDIC had transferred " [a]ny and all claims, actions, causes of action, choses in action, judgments, demands, rights, damages and liens, together with the right to seek reimbursement of attorney's fees, costs or other expenses of any nature whatsoever, whether, whether known or unknown, arising from, relating to, or based upon the Loan Documents and the Rights." The FDIC further "unconditionally grant[ed] transfer[red] and assign[ed] ... all of [the FDIC's] right, title and interest in the Loan Documents, Rights and Claims."

Based upon an investigation, the FDIC determined that co-Defendant Floridian Title was involved in a fraudulent scheme with RED II. Among other allegations, the FDIC has alleged that Floridian Title did not make the required disclosures regarding its knowledge of the familial relationships between the parties to the transactions, did not collect the required deposits, and made

material misrepresentations to BankUnited. On May 12, 2012, the FDIC, through counsel, provided notice to First American that it claimed that Floridian Title's misconduct fell within the coverage provided by the CPLs that First American issued to BankUnited.

There are three CPLs issued by First American at issue in this case, the Blanket CPL issued December 7, 2007, the Dario CPL issued January 24, 2008, and the Gustavo CPL, issued June 4, 2008.

> The Blanket CPL provides that
>
> When title insurance from [First American] is specified for your protection in connection with closings of real estate transaction in which you are to be the lessee or purchaser of an interest in land or a lender secured by a mortgage (including any other security instrument) of an interest in land, the First American Title Insurance Company, subject to the Conditions and Exclusions set forth below, hereby agrees to reimburse you for actual loss incurred by you in connect with such closing wehn conducted by said Issuing Agent or Approved Attorney when such loss arises out of:
>
> 1. Failure of said Issuing Agent or Approved Attorney to comply with your written closing instruction to the extent that they relate to (a) the status of the tittle to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land, including the obtaining of documents and the disbursement of funds necessary to establish such status of title or lien, or (b) the obtaining of any other document, specifically required by you, but not to the extent that said instructions require a determination of the validity, enforceability or effectiveness of such other document, or (c) the collection and payment of funds due you, or
>
> 2. Fraud or dishonesty of said Issuing Agent or Approved Attorney in handling your funds or documents in connection with such closing.

The Blanket CPL fully adheres to the form CPL promulgated by the State of Florida. *See* Fla. Stat. § 627.786; Fla. Admin. Code. r. 69O-186.010 (1991). The parties have stipulated that the Dario CPL adheres to the form CPL language; however, the phrase "of an interest in land" is missing following the parenthetical "(including any other security instrument)."

The letter contains certain exclusions, and the exclusion relevant to the litigation provides that "Claims of loss must be made promptly to [First American]. When failure to give prompt notice shall prejudice [First American], then liability of [First American] hereunder shall be reduced to the extent of such prejudice. [First American] shall not be liable hereunder unless notice of loss in writing is received by [First American] within ninety (90) days of the date of discovery of such loss." The Dario CPL contains the same operative language, but the Gustavo CPL has no 90 day notice requirement. Under Paragraph F of the Gustavo CPL, "[t]he protection herein offered does not extend to real property transactions in the states of Florida, Iowa, Kansas, Louisiana, Nebraska, New Hampshire, New York, Pennsylvania, Texas, Vermont and Virginia. Closing Protection letters have been regulated under the laws of those states." Based on the Deposition Testimony of Sean Newbold, the FDIC's corporate representative, the FDIC brings its claims under the Gustavo and Dario CPLs, and not the Blanket CPL.

The FDIC brought its breach of contract claims, claiming that, as to both the Gustavo and Dario loans, First American was liable for Floridian Title's misconduct and misrepresentations under the CPLs.

**II . Analysis**

First American has moved for summary judgment based on three primary factors. First, it argues that the FDIC no longer has standing to pursue the claim. It then argues that the FDIC failed to comply with the notice requirements of the CPLs. It finally argues that there is insufficient facts in evidence to support the FDIC's claims.

The FDIC has moved for summary judgment regarding standing and notice.

### A. Summary Judgment Standard

Summary judgment is authorized where there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The party opposing the motion for summary judgment may not simply rest upon mere allegations or denials of the pleadings; the non-moving party must establish the essential elements of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The nonmovant must present more than a scintilla of evidence in support of the nonmovant's position. A jury must be able reasonably to find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

### B. Standing

As an initial matter, the FDIC cannot proceed under the Gustavo CPL. The Gustavo CPL explicitly states that its protections do not extend to real property transactions in the State of Florida. The loan at issue in the Gustavo CPL was a real estate transaction in the state of Florida. Thus, the Gustavo CPL does not provide the FDIC any basis for a claim. However, despite some statements made to the contrary, the FDIC may still proceed on the Gustavo claim under the Blanket CPL.

#### *1. The FDIC Could Not Retain the CPL Rights Once it Sold the Underlying Loan Documents.*

The Report and Recommendation recommends that this Court grant Defendant First American's Motion for Summary Judgment because the FDIC does not have standing. This Court should adopt the Magistrate's report regarding standing. The Magistrate's first basis for denying the FDIC standing is that the CPL rights run with the land. When the FDIC divested itself of the Gustavo

and Dario Loans, Notes, and Mortgages, the Magistrate determined that it divested itself of the rights under the CPL.

The Magistrate based this decision on its acceptance of Defendant's argument that *Wall St. Mortg. Bankers, Ltd. V. Attorneys' Title Ins. Fund, Inc.*, 1:08-cv-21648 (S.D. Fla. Sept. 9, 2009) (Moreno, J.) is squarely on point. In that case, this Court adopted the Magistrate's Report and Recommendations. The *Wall Street* Report and Recommendation adopted by this Court determined that by selling the underlying note and mortgage, the selling bank sold the CPL rights because the "coverage under the policy would only be afforded to those who hold interest in the 'land' for which the CPL was issued." *Id.* D.E. 97, p. 7. The CPL in *Wall Street* contained the same language at issue in the CPL's in this case.

Another decision in this district seems to have been based on a similar understanding of the law. *Federal Deposit Insurance Corp. as Receiver for IndyMac Bank, FSB*, 1:10-cv-21197 (S.D. Fla. May 17, 2011) (Huck, J.). In *Indymac*, the court held a special bench trial and determined "at this trial that the FDIC owns the loans at issue." *Id.* at D.E. 164, p.1. In that case, the Defendant contended that all assets of the failed bank were sold by the FDIC. However, after the bench trial, the "Court found that the [loans at issue] were not among the loans sold to [assuming bank], and that the FDIC owns and can sue in relation to these loans in this action." *Id.* at 3.

One final case in this district contradicts *Wall Street* and *Indymac*. In *Federal Deposit Ins. Corp. v. Property Transfer Svcs., Inc.*, 12-cv-80533 (S.D. Fla. May 15, 2013) (Middlebrooks, J.) ("*PTS*"). Judge Middlebrooks took an opposing view. *PTS* concerned the same parties (FDIC and First American) as the case at bar, and interpreted the same Purchase and Assignment Agreement and the same carveouts at issue here. Judge Middlebrooks ruled that "Since the loss at issue was

caused by [the closing agent's] purported inaction in relation to conduct which was indemnified under the CPLs and the FDIC sold the loans on the Units to New Bank at a loss to preserve its rights in this matter, the right to pursue the instance claims was explicitly excluded from the sale of assets to New Bank. *Id.* D.E. No. 136, p. 8. While this evolving area of law is by no means clear and conflicts exist within this district in the few cases that have been decided and cited to this Court, the better approach appears to be in finding that the right to enforce the CPL's runs with the owner of the land." However, it must be noted that the Court would be well within its discretion to decide otherwise. Though it is a close issue, it appears that, under prior precedent of this district, the Magistrate was correct in determining that the FDIC *could not* retain the CPL rights when it sold the underlying loan documents.

### *2. This Court Does Not Reach the Remainder of the Parties' Arguments.*

Because this Court concludes that the FDIC could not have retained the CPL rights when it divested itself of the underlying properties, mortgages, and notes, this Court need not decide whether the FDIC actually divested itself of the rights in the Purchase and Assignment agreement or the subsequent assignment. Similarly, this Court need not reach the issues of the Plaintiff's compliance with the Notice Requirements and the sufficiency of the Plaintiff's evidence.

## III. Conclusion

In light of the foregoing, the Court hereby GRANTS Defendant First American Title Insurance Company's Motion for Summary Judgment. The Court DENIES Plaintiff's Motion for Summary Judgment.

DONE AND ORDERED in Chambers at Miami, Florida, this 23 day of September, 2013.

FEDERICO A. MORENO
CHIEF UNITED STATES DISTRICT JUDGE

Copies provided to:

United States Magistrate Judge Alicia M. Otazo-Reyes

Counsel of Record